**Reversed, Rendered, and Remanded and Opinion filed August 25, 2015.**



In The

# Fourteenth Court of Appeals

## NO. 14-14-00562-CV

## COOPER INDUSTRIES, LLC, COOPER INDUSTRIES, LTD., COOPER US, INC., AND COOPER INDUSTRIES, PLC, Appellants

### V.

## PEPSI-COLA METROPOLITAN BOTTLING CO., INC., AND WHITMAN INSURANCE COMPANY LTD., Appellees

**On Appeal from the 80th District Court
Harris County, Texas
Trial Court Cause No. 2011-77606**

### O P I N I O N

This is an interlocutory appeal from an order denying a motion to compel arbitration. Appellee Pepsi-Cola Metropolitan Bottling Co. ("Metro") sued appellants Cooper Industries, LLC, Cooper Industries, Ltd., Cooper US, Inc., and Cooper Industries, PLC (collectively, "Cooper"), seeking to enforce two agreements. Appellee Whitman Insurance Company Ltd. later joined the suit as a plaintiff. Cooper filed a motion to compel arbitration pursuant to the agreements.

The trial court denied the motion after a hearing without making findings of fact or conclusions of law.

On appeal, Cooper argues the trial court erred because the agreements require arbitration and appellees did not show that Cooper waived its right to arbitrate. We agree that the trial court erred in denying Cooper's motion to compel arbitration. We therefore reverse the trial court's order, render judgment ordering arbitration of appellees' claims against the Cooper defendants who are parties to this appeal,[1] and remand this case to the trial court for further proceedings consistent with this opinion, including the grant of an appropriate stay.

## BACKGROUND

This case concerns indemnification obligations regarding asbestos claims. Appellees' second amended petition and Cooper's motion to compel arbitration provide the pertinent background of the parties' dispute.[2] We begin by discussing the various transactions that resulted in the current alignment of the parties because they are relevant to our disposition of the case.

IC Industries—Metro's predecessor—acquired Abex Corporation and Pneumo Corporation, two companies that manufactured products containing asbestos. IC Industries sold its stock in both companies to PA Holdings under a Stock Purchase Agreement ("SPA"). Under the SPA, IC Industries agreed to indemnify PA Holdings against certain claims filed between August 29, 1988 and August 29, 1998, and PA Holdings agreed to indemnify IC Industries and its

---

[1] Although Cooper Holdings, Ltd. joined appellants in the motion to compel arbitration, the trial court did not rule on the motion with respect to Cooper Holdings, Ltd. The notice of appeal does not list Cooper Holdings, Ltd. as an appellant. Accordingly, Cooper Holdings, Ltd. is not an appellant in this case. We therefore do not address whether it was entitled to arbitration of Metro's and Whitman's claims.

[2] Appellees filed a third amended petition after Cooper had filed its motion to compel arbitration.

affiliates against claims filed after August 29, 1998. As explained below, a Cooper entity later guaranteed an indemnity of PA Holdings' successor. The SPA provides that if any controversy or claim arising out of or relating to the agreement has not been resolved within twenty-one days after notice is given, either party may initiate arbitration to resolve the dispute.

PA Holdings subsequently became Pneumo Abex, LLC. IC Industries became appellee Metro through a merger and name change. Whitman's predecessor was a captive insurance carrier affiliated with IC Industries, and Whitman is now a subsidiary of Metro.

Pneumo Abex eventually sold one of its product lines to Wagner Electronic Corporation through an Asset Purchase Agreement ("APA"). Under the APA, Wagner agreed to indemnify and hold Pneumo Abex harmless for any obligations Pneumo Abex owed to Metro and Whitman. Like the SPA, the APA contains an arbitration provision. In section 13.2(c), the APA provides that any dispute arising in connection with the agreement and not settled by the parties within sixty days after notice is given "shall be finally settled by arbitration . . . ." The provision states that "[a]ny party may request a court to provide interim relief without waiving the agreement to arbitrate."

Wagner's then-parent company, Cooper Industries, LLC, guaranteed Wagner's indemnification of Pneumo Abex under a Mutual Guaranty agreement signed in 1994. Section 6 of the Mutual Guaranty provides that any claim or dispute "arising in connection with" this agreement shall be resolved in accordance with sections 13.2(b) and (c) of the APA, thus explicitly incorporating the arbitration provision of the APA.

Pneumo Abex filed a lawsuit in New York against various Cooper defendants, contending that Cooper Industries, LLC was mismanaging its assets

3

and thus endangering the Mutual Guaranty. Metro and Whitman were not parties to that suit. In 2011, the Cooper defendants and Pneumo Abex reached a settlement agreement, which the judge in the New York lawsuit approved. Under the settlement agreement, PCT International Holdings, Inc.—then-owner of Pneumo Abex—transferred its ownership interest to a trust. Cooper Industries' indemnities were released and, in exchange, the trust received a cash payment and notes to be paid over five years.

In response to the 2011 settlement agreement, Metro filed this lawsuit alleging various causes of action, among them tortious interference with contractual relations, conspiracy to commit tortious interference, fraudulent transfers, and conspiracy to commit fraudulent transfers.[3] The suit named several defendants, including the Cooper appellants.[4] Whitman later joined the suit as a plaintiff, claiming that as successor to an affiliate of IC Industries, it is entitled to indemnification from Pneumo Abex under the SPA. Metro and Whitman alleged that the settlement agreement was the end result of collusive efforts by the defendants that left Pneumo Abex and the trust with a finite amount of assets. In particular, Metro and Whitman alleged that the defendants "conspired to buy their way out of uncapped guaranty obligations" and made Pneumo Abex's performance of its indemnity obligations to Metro and Whitman more "burdensome, difficult, and expensive, if not impossible."

Citing the Federal Arbitration Act, Cooper filed a motion to compel

---

[3] Appellees pled additional causes of action later abandoned; therefore, we need not analyze them.

[4] Metro originally brought this action against Cooper Industries, LLC, Cooper Industries Ltd., Cooper Holdings, Ltd., Cooper US, Inc., Cooper Industries, PLC, M & F Worldwide Corp., MAFCO Worldwide Corp., MAFCO Consolidated Group, LLC, PCT International Holdings, Inc., and the Pneumo Abex Asbestos Claims Settlement Trust. The third amended petition also names Mcg Intermediate Holdings Inc. as a defendant.

4

arbitration under various agreements, including the SPA and the Mutual Guaranty. After an unreported hearing, the court denied the motion. This interlocutory appeal followed. *See* 9 U.S.C. § 16(a)(1)(B) (West 2009); Tex. Civ. Prac. & Rem. Code Ann. § 51.016 (West 2015).

## ANALYSIS

On appeal, Cooper argues that the trial court erred in denying the motion to compel arbitration because (1) Metro's and Whitman's claims are subject to arbitration under the SPA and the Mutual Guaranty, and (2) Cooper has not waived the right to arbitrate as to either Metro or Whitman. We address each issue in turn.

When the Federal Arbitration Act governs an arbitration clause, a Texas trial court conducts a summary proceeding under Texas procedural rules to make the gateway determination of arbitrability, and it applies Texas substantive law regarding whether a litigant must arbitrate.[5] *See In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex. 2005) (orig. proceeding). Because the trial court did not sign written findings or conclusions, we may uphold the court's order on any theory supported by the evidence, and we imply all factual findings supported by

---

[5] The APA states that it is governed by Delaware law, but the parties do not discuss Delaware law. The SPA contains a clause stating that the "law of the State of New York shall govern the parties' dispute." In appellees' response to Cooper's motion to compel arbitration, they argued that New York law governs the arbitration provision in the SPA. On appeal, however, appellees assert that we need not address the question whether Texas or New York law applies because Cooper is not entitled to compel arbitration under either state's laws. Cooper, for its part, contends that Texas law is entirely consistent with New York law, and that it is entitled to arbitration under the law of both states.

Texas courts may presume that another state's law is the same as Texas law absent proof or argument to the contrary. *Coca–Cola Co. v. Harmar Bottling Co.*, 218 S.W.3d 671, 685 (Tex. 2006). The party requesting application of a foreign law has the initial burden of showing that the foreign law conflicts with Texas law. *Greenberg Traurig of New York, P.C. v. Moody*, 161 S.W.3d 56, 70 (Tex. App.—Houston [14th Dist.] 2004, no pet.). Because all parties assert the outcome is the same under both New York and Texas law, and the parties do not address Delaware law, we apply Texas law.

the record that are necessary to the order. *In re W.E.R.*, 669 S.W.2d 716, 717 (Tex. 1984) (per curiam); *Rush v. Barrios*, 56 S.W.3d 88, 96 (Tex. App.—Houston [14th Dist.] 2001, pet. denied). We defer to the trial court's factual determinations that are supported by sufficient evidence, but we review the trial court's legal determinations de novo. *In re Labatt Food Serv., L.P.*, 279 S.W.3d 640, 643 (Tex. 2009).

## I. Cooper established that appellees' claims fall within the scope of valid arbitration agreements that Cooper can invoke.

Cooper's first issue asks whether the trial court erred in refusing to compel arbitration because appellees' claims are founded on two contracts that contain mandatory arbitration provisions. Arbitration cannot be ordered in the absence of an agreement to arbitrate. *Freis v. Canales*, 877 S.W.2d 283, 284 (Tex. 1994) (orig. proceeding) (per curiam). The party moving for arbitration has the initial burden to present evidence that a valid arbitration agreement exists. *In re Koch Indus., Inc.*, 49 S.W.3d 439, 444 (Tex. App.—San Antonio 2001, orig. proceeding). If there is an agreement to arbitrate, the party must also establish that the claims asserted fall within the scope of the agreement. *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 737 (Tex. 2005).

### A. Cooper may compel arbitration against Metro under the SPA.

Cooper argues that Metro's claims are subject to arbitration under the SPA, which contains a broad clause requiring arbitration of any controversy or claim arising out of or relating to the agreement. The parties to the SPA are Pneumo Abex and a company that later became known as Metro. Metro is thus a signatory to the agreement, but Cooper is not. Appellees Metro and Whitman respond that Cooper cannot compel arbitration as a non-signatory. Whether a non-signatory can compel arbitration questions the existence of a valid arbitration agreement between

6

the parties and therefore is a gateway matter for the court to decide. *See In re Weekley Homes, L.P.*, 180 S.W.3d 127, 130 (Tex. 2005).

The supreme court has recognized that "[a] person who has agreed to arbitrate disputes with one party may in some cases be required to arbitrate related disputes with others." *Meyer v. WMCO-GP, LLC*, 211 S.W.3d 302, 304 (Tex. 2006). In particular, a signatory plaintiff who seeks to derive a "direct benefit" from a contract with an arbitration clause may be equitably estopped from refusing arbitration. *Id.* at 305; *see also In re Kellogg*, 166 S.W.3d at 739 (discussing direct-benefits estoppel of non-signatories). Although the boundaries of direct-benefits estoppel are not always clear, the signatory generally must arbitrate claims if liability arises from a contract with an arbitration clause, but not if liability arises from general obligations imposed by law. *In re Vesta Ins. Group, Inc.*, 192 S.W.3d 759, 761 (Tex. 2006) (per curiam). When the facts are not disputed, the application of estoppel is a question of law, not a matter committed to the trial court's discretion. *See Meyer*, 211 S.W.3d at 308.

Tortious interference claims do not fall comfortably within either category. *In re Vesta*, 192 S.W.3d at 761. The obligation not to interfere with existing contracts is a general obligation imposed by law, but it is not imposed on the parties to that contract because a party cannot interfere tortiously with its own contract. *Id.* (citing *Holloway v. Skinner,* 898 S.W.2d 793, 796 (Tex. 1995)). A person must be a stranger to a contract to interfere tortiously with it. *Id.* (citing *Morgan Stanley & Co. v. Texas Oil Co.*, 958 S.W.2d 178, 179 (Tex. 1997)). Thus, a signatory generally is not "required to arbitrate a tortious interference claim against a complete stranger to his contract and its arbitration clause." *Id.* at 763. But if the signatory plaintiff's right to recover and its damages depend on the existence of the contract containing the arbitration clause, or if the non-signatory

7

defendant is an agent or affiliate of a signatory, then the plaintiff can be compelled to arbitrate its claim. *Meyer*, 211 S.W.3d at 306–07; *In re Vesta*, 192 S.W.3d at 762; *PER Group, L.P. v. Dava Oncology, L.P.*, 294 S.W.3d 378, 387–88 (Tex. App.—Dallas 2009, no pet.); *see also In re Kellogg*, 166 S.W.3d at 739 (listing estoppel and agency among the theories for requiring arbitration with non-signatory).

Cooper contends that it may enforce the arbitration clause under the supreme court's opinion in *Meyer*. Appellees argue that *Meyer* is distinguishable because the non-signatories in that case were not strangers to the agreement, as they contend Cooper is here.

In *Meyer*, Ford Motor Company's agreement with one of its dealers provided Ford with an assignable right of first refusal to acquire the dealer's business if the dealer decided to sell. 211 S.W.3d at 304. When the dealer later signed an agreement to sell its business to WMCO, Ford exercised its right and assigned that right to Meyer and his company. *Id.* WMCO then sued the dealer, Meyer, and Ford, alleging, among other things, that Meyer tortiously interfered with WMCO's agreement to buy the dealer's business. *Id.* Meyer and Ford moved to compel arbitration under a clause in the agreement between the dealer and WMCO. *Id.* at 304–05. Meyer and Ford contended that because WMCO made the agreement with the dealer, WMCO was equitably estopped from refusing arbitration. *Id.* at 305. The supreme court agreed, noting that WMCO's claims against Ford and Meyer "depend on the existence of" WMCO's agreement with the dealer:

> If [the dealer] properly terminated the [agreement with WMCO], based on Ford's exercise of its right of first refusal, then there would be no claim for tortious interference, no need to decide whether Ford validly exercised the right of first refusal, and no need to decide

whether Meyer and Ford conspired to violate statutes protecting dealers from certain actions by manufacturers.

*Id.* at 307. The court also considered it important that WMCO's damages "cannot be calculated without reference to the [agreement]." *Id.* The court thus held that Meyer and Ford, although nonsignatories to the agreement between WMCO and the dealer, could compel arbitration under the agreement's arbitration clause. *Id.* at 308.[6]

Similarly, appellees' tortious interference claims against Cooper in their second amended petition depend on the existence of the SPA and Cooper's guaranty of Pneumo Abex's performance thereunder. *See Smith v. Kenda Capital, LLC*, 451 S.W.3d 453, 460 (Tex. App.—Houston [14th Dist.] 2014, no pet.) ("[D]irect benefits estoppel analysis focuses on whether a contract containing the clause at issue also includes other terms on which the signatory plaintiff must rely to prosecute its claims."). As discussed above, the SPA required Pneumo Abex to indemnify Metro's predecessor, and Cooper and its then-subsidiary guaranteed that indemnity in 1994. Appellees allege that in 2011, Cooper tortiously caused (and conspired with others to cause) Pneumo Abex to breach its indemnity obligation to Metro under the SPA, which contains an arbitration clause.[7] If Pneumo Abex did not breach the SPA in restructuring the guaranty and other commitments backing its indemnity obligation, then there would be no claim for tortious interference or conspiracy. Moreover, the remedies appellees seek under each cause of action are

---

[6] In a portion of the *Meyer* opinion, the supreme court also noted allegations of substantially interdependent and concerted misconduct. 211 S.W.3d at 307–08. But the court compelled arbitration on a theory of direct-benefits estoppel, and it declined to adopt a theory of concerted-misconduct estoppel in a subsequent case. *In re Merrill Lynch Trust Co. FSB*, 235 S.W.3d 185, 191 & n.22 (Tex. 2007) (orig. proceeding). We rely solely on the theory of direct-benefits estoppel here.

[7] Alternatively, appellees allege that Cooper's actions rendered Pneumo Abex's performance of its obligations to Metro under the SPA more difficult, if not impossible.

the direct benefit of the indemnity obligation to Metro under the SPA: they request injunctive relief obligating Cooper to fund any shortfall in the trust set up to pay the indemnity, or alternatively damages for the loss of Cooper's guaranty of that indemnity—damages that cannot be calculated without reference to the terms of the indemnity obligation in the SPA. For these reasons, *Meyer* supports Cooper's ability to compel Metro to arbitrate its tortious interference claims under the SPA's arbitration clause.

Relying on our decision in *Brewer & Pritchard, P.C. v. AMKO Resources International, LLC*,[8] appellees argue that Cooper nevertheless cannot compel arbitration because it is a complete stranger to the SPA. They point out that Cooper had no relationship with the SPA's signatories—Metro's predecessor and Pneumo Abex—when the SPA was executed, and that the SPA itself did not require Cooper to guarantee Pneumo Abex's performance. We do not agree that these facts defeat direct-benefits estoppel.

Unlike in *Brewer & Pritchard*, Cooper guaranteed the performance of one of the agreement's signatories, Pneumo Abex, in 1994—long before the allegedly tortious 2011 transactions made the basis of this suit. Moreover, *Brewer & Pritchard* did not involve a non-signatory defendant seeking to compel arbitration with a signatory plaintiff (as our inquiry under the SPA does), nor did it address whether the plaintiff's right to recover and its damages depended on the existence of the agreement containing the arbitration clause. Metro's tortious interference claims do depend on the existence of the SPA, so *Meyer* supports arbitration of those claims as explained above. Other courts agree that a guarantor or surety of a

---

[8] No. 14-13-00113-CV, 2014 WL 3512836, at *11 (Tex. App.—Houston [14th Dist.] July 15, 2014, no. pet.) (mem. op.) (holding buyer of leases was stranger to seller's fee agreement with law firm that had represented seller in dispute with lease operator, and therefore firm could not use arbitration clause in fee agreement to compel buyer to arbitrate claims regarding buyer's failure to pay firm a portion of sales price).

party's obligation under a contract containing an arbitration clause may invoke or be bound by that clause in a suit regarding the obligation.[9] Because Metro's tortious interference claims depend on the existence of Pneumo Abex's indemnity obligation in the SPA, which Cooper guaranteed, we hold Cooper may compel signatory Metro to arbitrate those claims under the SPA.[10]

## B.   Cooper may compel arbitration against Whitman and Metro under the Mutual Guaranty despite its termination.

Cooper also argues that both Whitman's and Metro's claims are independently subject to arbitration under the 1994 Mutual Guaranty agreement, which broadly requires arbitration of any dispute arising in connection with the

---

[9] *See, e.g.*, *Choctaw Generation L.P. v. Am. Home Assur. Co.*, 271 F.3d 403, 406–08 (2d Cir. 2001) (holding surety for one party's obligation under a construction contract containing arbitration clause could compel other party to arbitrate its claims against surety even though surety was not a party to construction contract and surety contract contained no arbitration clause because the controversy presented was linked to the construction contract); *T-Mobile USA, Inc. v. Montijo*, No. C12-1317RSM, 2012 WL 6194204, at *4 (W.D. Wa. Dec. 11, 2012) (same as to guarantors); *Bimota SPA v. Rousseau*, 628 F. Supp. 2d 500, 505–06 (S.D.N.Y. 2009) (same); *Fujian Pac. Elec. Co. v. Bechtel Power Corp.*, No. C 04-3126 MHP, 2004 WL 2645974, at *6–7 (N.D. Cal. Nov. 19, 2004) (same); *see also Bell v. Campbell*, 143 S.W. 953, 956–57 (Tex. Civ. App.—Amarillo 1911, writ ref'd) (holding sureties bound by arbitration agreement and award against principal); *Empire Steel Corp. v. Omni Steel Corp.*, 378 S.W.2d 905, 911 (Tex. Civ. App.—Fort Worth 1964, writ ref'd n.r.e.) (same as to guarantors). We note that in a subsequent case, the Second Circuit described *Choctaw* as involving a situation in which the non-signatory surety (American Home) was explicitly named in the underlying contract as having certain tasks to perform thereunder. *Ross v. Am. Exp. Co.*, 547 F.3d 137, 145 (2d Cir. 2008). The *Choctaw* opinion does not appear to support this characterization. *See* 271 F.3d at 403–05, 407 (noting that underlying contract required party to post and replenish letter of credit, and that American Home contracted separately with party to issue bond securing party's performance but was not party to underlying contract). In any event, none of the cases cited at the beginning of this footnote attach importance to whether the surety or guarantor is identified by name in the underlying agreement containing the arbitration clause.

[10] Because we conclude that Whitman is bound to arbitrate its claims under the 1994 Mutual Guaranty, as discussed below, we do not address whether Cooper could compel Whitman to arbitrate under the SPA. We also note that the parties have not separately addressed whether Cooper could compel Metro to arbitrate its claims of fraudulent transfer and conspiracy to commit fraudulent transfer. We likewise need not address that issue under the SPA given our conclusion below that Metro is bound to arbitrate those claims under the Mutual Guaranty.

11

agreement. The parties to the Mutual Guaranty are Pneumo Abex and Cooper Industries, LLC. Thus, appellees Whitman and Metro are not parties to the Mutual Guaranty. Nevertheless, direct-benefits estoppel can also require non-signatory plaintiffs to arbitrate if they seek to derive a direct benefit from a contract containing an arbitration clause. *See In re Kellogg*, 166 S.W.3d at 739–741 (considering whether plaintiff's claims seek to enforce contract or stand independently of contract).

In their second amended petition, appellees seek to enforce Cooper's obligations under the Mutual Guaranty. They allege that Cooper's acts of tortious interference in connection with the 2011 settlement (and its agreement with the other defendants to interfere) were undertaken with a specific intent to cap its guaranty obligation, and that Cooper engaged in fraudulent transfers (and conspired to do so) when it obtained a release of its guaranty obligation in exchange for certain payments to the trust. The remedies appellees seek include an injunction obligating Cooper to fund any shortfall in the trust set up to pay the indemnity Cooper had guaranteed, or alternatively damages in the amount of the shortfall. In short, appellees are claiming the benefit of the Mutual Guaranty, so they are estopped from avoiding the burden of its arbitration clause. *See In re Kellogg*, 166 S.W.3d at 739.

Appellees respond that arbitration can no longer be compelled under the Mutual Guaranty because Cooper, Pneumo Abex, and others terminated that agreement following the 2011 settlement. They point to the following language in the termination agreement:

> Effective as of the Closing, and notwithstanding any provision of the Mutual Guaranty to the contrary, the Mutual Guaranty shall be fully, finally and irrevocably terminated and of no further force or effect, and no Party nor any other Person shall have any further obligation or

12

liability under the Mutual Guaranty from and after Closing.

. . .

Each Party hereby irrevocably consents and agrees that any dispute regarding this Agreement shall be brought only to the exclusive jurisdiction of the federal or state courts located in New York County, New York . . . .

We disagree with appellees that this language cuts off the estoppel effect of the Mutual Guaranty's arbitration clause.

In general, as our sister court has held, an "arbitration agreement contained within a contract survives the termination or repudiation of the contract as a whole." *Cleveland Constr. Inc. v. Levco Constr. Inc.*, 359 S.W.3d 843, 854 (Tex. App.—Houston [1st Dist.] 2012, pet. dism'd)) (citing *Henry v. Gonzalez*, 18 S.W.3d 684, 690 (Tex. App.—San Antonio 2000, pet. dism'd)).[11] Our facts illustrate the sensible result of applying this rule here. Appellees' position is that the Mutual Guaranty was tortiously and fraudulently terminated by Cooper and that the court should, in effect, require Cooper to honor its guaranty notwithstanding the termination. Having asked the court to ignore the Mutual Guaranty's termination, appellees can hardly complain if its clause requiring arbitration of any dispute "arising in connection with" the agreement is also given effect.

Appellees urge us instead to follow *TransCore Holdings, Inc. v. Rayner*, 104 S.W.3d 317 (Tex. App.—Dallas 2003, pet. denied). In *TransCore*, parties including TransCore and Rayner entered into a stock purchase agreement

---

[11] *See also Butchers, Food Handlers & Allied Workers Union, Local 174 v. Hebrew Nat'l Kosher Foods, Inc.*, 818 F.2d 283, 287 (2d Cir. 1987) ("If the contract does not state that the duty to arbitrate ends with the termination of the contract, the strong policies favoring arbitration should ordinarily lead the court to conclude that the obligation to arbitrate—especially as to claims that accrued during the term of the contract—survives the expiration of the contract.").

containing an arbitration clause. *Id.* at 319. Subsequently, the parties entered into a termination agreement that included a backward-looking mutual release of obligations and claims and a forward-looking provision requiring actions relating to the agreement to be brought in court. *Id.* at 320–21, 323. Rayner argued that the termination agreement released him from his obligation to arbitrate TransCore's claim that he made misrepresentations prior to termination. *Id.* at 321. The Dallas Court of Appeals agreed, noting that the termination agreement was a new agreement with new consideration that unconditionally released the parties from all previous obligations. *Id.* at 321–22, 323.

This case differs from *TransCore* in two critical respects. First, the backward-looking release language in the *TransCore* termination agreement is absent here. This termination agreement, which was entered into effective April 5, 2011, only eliminates any "further obligation" to arbitrate under the Mutual Guaranty "from and after" termination. The provision agreeing to bring disputes regarding the termination agreement only to New York courts does not address the handling of disputes under the Mutual Guaranty.[12] Thus, the termination agreement leaves intact the obligation under the Mutual Guaranty to arbitrate disputes "arising in connection with the agreement" up to the point of termination. Appellees' claims challenge Cooper's acts leading up to and including the 2011 settlement, which was entered into as of February 1, 2011. Because those claims arise in connection with the Mutual Guaranty agreement as explained above, the termination agreement does not affect the obligation to arbitrate them.

Second, the termination agreement in *TransCore* was between the parties to the original agreement: one party seeking to compel arbitration under the original

---

[12] *See Valero Energy Corp. v. Teco Pipeline Co.*, 2 S.W.3d 576, 587 (Tex. App.— Houston [14th Dist.] 1999, no pet.).

14

agreement, and another party arguing that the termination agreement ended its obligation to arbitrate. Here, appellees are not parties to the termination agreement. Instead, appellees are third parties trying to revive the obligations of the original agreement. The logical force of the doctrine of direct-benefits estoppel—which was not at issue in *TransCore*—supports requiring appellees to arbitrate their claims.

Appellees' claims against Cooper hinge on the existence of the Mutual Guaranty, and the gist of their case is to undo its termination. If Cooper "properly terminated the" Mutual Guaranty, then "there would be no claim for tortious interference" or fraudulent transfer and no need to determine whether Cooper "conspired" with the other defendants to do so. *Meyer*, 211 S.W.3d at 307. Appellees cannot have it both ways, picking and choosing which portions of the Mutual Guaranty should be enforced and which portions should not. *See id.* at 306; *cf. Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983) ("No single [contractual] provision taken alone [should] be given controlling effect; rather, all the provisions must be considered with reference to the whole instrument").

We hold that the termination of the Mutual Guaranty agreement between Cooper and Pneumo Abex did not abrogate Cooper's ability to compel arbitration of appellees' claims under that agreement. In addition, as explained above, Cooper may compel arbitration of Metro's claims under the SPA. Accordingly, we sustain Cooper's first issue and hold that the trial court erred to the extent it denied Cooper's motion to compel arbitration on the ground that appellees' claims do not fall within the scope of valid arbitration agreements that Cooper can invoke.

## II. Cooper did not expressly waive its right to arbitrate appellees' claims.

Once the arbitration movant establishes a valid arbitration agreement that encompasses the claims at issue, a trial court has no discretion to deny the motion

15

to compel arbitration unless the opposing party proves a defense to arbitration such as waiver. *J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003); *In re First Merit Bank, N.A.*, 52 S.W.3d 749, 753–54 (Tex. 2001) (orig. proceeding). Cooper's second and third issues ask whether the trial court erred to the extent it denied the motion to compel by finding that Cooper waived its right to arbitration against Metro and Whitman.

A party can waive a contractual right to arbitrate either expressly or by implication. *Sedillo v. Campbell*, 5 S.W.3d 824, 826 (Tex. App.—Houston [14th Dist.] 1999, no pet.). Whether waiver has occurred is a question of law for the court that we review de novo. *Perry Homes v. Cull*, 258 S.W.3d 580, 598 (Tex. 2008). Because public policy favors arbitration, there is a strong presumption against waiver of the right to arbitrate. *In re Bruce Terminix Co.*, 988 S.W.2d 702, 704 (Tex. 1998) (orig. proceeding).

Express waiver arises when a party affirmatively indicates that it wishes to resolve the case in the judicial forum rather than in arbitration. *See Okorafor v. Uncle Sam & Assocs., Inc.*, 295 S.W.3d 27, 39 (Tex. App.—Houston [1st Dist.] 2009, pet. struck). Appellees contend that Cooper expressly waived the right to arbitrate by first moving to dismiss the case in favor of adjudication in New York based on principles of exclusive jurisdiction, comity, and forum non conveniens. In its motion, Cooper argued that the New York court that approved the 2011 settlement had exclusive jurisdiction over questions regarding that settlement.

Moving to dismiss in favor of exclusive jurisdiction in another court is equivalent, for present purposes, to moving to transfer venue or filing a notice of removal to another court. The Supreme Court of Texas and many other courts have held that such actions do not waive a right to arbitrate. *E.g., Richmont Holdings, Inc. v. Superior Recharge Sys., L.L.C.*, 455 S.W.3d 573, 576 (Tex. 2015)

16

(per curiam); *In re Citigroup Global Markets, Inc.*, 258 S.W.3d 623, 626 (Tex. 2008).[13]

In *Richmont Holdings*, Superior and Richmont signed an asset purchase agreement with an arbitration clause, and Superior's part-owner, Blake, signed a related employment agreement with Richmont that contained a Dallas County forum selection clause.   455 S.W.3d at 575.   Superior and Blake later sued Richmont in Denton County on various causes of action and sought a declaration that a covenant not to compete in the employment agreement was unenforceable. *Id.*  In response, Richmont moved to transfer venue to Dallas County and also filed a separate suit against Blake in Dallas County to enforce the covenant not to compete.  *Id.*  Richmont later filed a motion to compel arbitration in the Denton County suit, but the trial court denied the motion.  *Id.* at 576.

The supreme court held that the motion should have been granted because Richmont had not waived arbitration.  *Id.*  The court explained that "[m]erely filing suit does not waive arbitration, even when the movant, as in this case, files a second, separate suit in another county based in part on a contract at issue in the first action.  Nor, we think, does moving to transfer venue.  The motion does not address the merits of the case."  *Id.* (citations omitted).

Thus, Richmont went far beyond asserting—as Cooper did here—that another forum was the only correct place to decide the parties' disputes.  Richmont actually filed a second suit in the other forum, yet the supreme court held that act

---

[13] *See also In re Bruce Terminix Co.*, 988 S.W.2d at 704 (citing case holding no waiver by defendant who removed case from state to federal court); *In re Frost Nat'l Bank*, 13-07-00748-CV, 2008 WL 4889836, at *3 (Tex. App.—Corpus Christi Nov. 7, 2008, no pet.) (holding party did not waive right to compel arbitration by moving to transfer venue based on provision in agreement) (mem. op.); *Global Fin. Servs., L.L.C. v. Estate of McLean*, No. 04-07-627-CV, 2008 WL 372521, at *3 (Tex. App.—San Antonio Feb. 13, 2008, no pet.) (mem. op.); *Granite Constr. Co. v. Beaty*, 130 S.W.3d 362, 367 (Tex. App.—Beaumont 2004, no pet.) ("[A] motion to transfer venue does not seek a final determination of the litigation.").

did not waive Richmont's ability to compel arbitration in the original suit. *Richmont* therefore supports the conclusion that Cooper did not waive its right to arbitration.

Similarly, in *In re Citigroup Global Markets*, the supreme court held that Citigroup did not waive arbitration despite its previous attempts to transfer the case to a federal multidistrict litigation court in New York. 258 S.W.3d at 626. The court held that despite statements in various transfer pleadings about the case's similarity to others already transferred, the potential savings in consolidated discovery, and the potential convenience of parties and witnesses in consolidated proceedings, Citigroup did not expressly waive its right to arbitrate. *Id.* As the court explained, "we disagree . . . that transfer to an MDL court is necessarily inconsistent with seeking arbitration." *Id.*

Appellees urge that *Citigroup* is distinguishable because in that case, the party seeking to compel arbitration expressly reserved the right to request arbitration early on. *See id.* But the court in *Citigroup* did not hold that a party must expressly reserve its right to arbitrate before seeking to transfer a case. Rather, *Citigroup* simply noted that the party "never opposed arbitration." *Id.* The same is true here: Cooper never opposed arbitration before filing its motion to compel. Accordingly, we hold the trial court erred to the extent it denied the motion to compel arbitration on the ground that Cooper expressly waived its right to arbitrate.

## III. Cooper did not waive its right to arbitrate by implication.

A party waives an arbitration clause by implication when it substantially invokes the judicial process to the other party's detriment or prejudice. *Perry Homes*, 258 S.W.3d at 589–90. The hurdle of proving implied waiver is a high bar. *Kennedy Hodges, L.L.P. v. Gobellan*, 433 S.W.3d 542, 545 (Tex. 2014) (per

18

curiam). In close cases, the "strong presumption against waiver" should govern. *Perry Homes*, 258 S.W.3d at 593.

Waiver must be decided on a case-by-case basis, and we look to the totality of the circumstances. *Id.* at 592. The party's conduct must be unequivocally inconsistent with claiming a known right to arbitration. *See Van Indep. Sch. Dist. v. McCarty*, 165 S.W.3d 351, 353 (Tex. 2005).[14] We consider a wide variety of factors in deciding whether a party substantially invoked the litigation process, such as:

- whether the party who pursued arbitration was the plaintiff or the defendant;

- how long the party who pursued arbitration delayed before seeking arbitration;

- when the party who pursued arbitration learned of the arbitration clause's existence;

- how much of the pretrial activity related to the merits rather than to arbitrability or jurisdiction;

- how much time and expense has been incurred in litigation;

- whether the party who pursued arbitration sought or opposed arbitration earlier in the case;

- whether the party who pursued arbitration filed affirmative claims or dispositive motions;

- how much discovery has been conducted and who initiated the discovery;

- whether the discovery sought would be useful in arbitration;

- what discovery would be unavailable in arbitration;

---

[14] As noted above, whether a party has waived an arbitration right is a question of law that this Court reviews de novo. *See Perry Homes*, 258 S.W.3d at 598. If the trial court is called upon to resolve factual disputes about the conduct in which the party engaged, this Court defers to the trial court's implied fact findings if they are supported by sufficient evidence. *See id.*

- whether activity in court would be duplicated in arbitration;

- when the case was to be tried; and

- whether the party who pursued arbitration sought judgment on the merits.

*Baty v. Bowen, Miclette & Britt, Inc.*, 423 S.W.3d 427, 433 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (citing *Perry Homes*, 258 S.W.3d at 591–92).

The quantum of litigation conduct that constitutes "substantial" invocation of the litigation process depends on the context. *See Perry Homes*, 258 S.W.3d at 593. A party who enjoys substantial direct benefits by gaining an advantage in the pretrial litigation process should be barred from turning around and seeking arbitration with the spoils. *Id.* Delay alone generally does not establish waiver. *See In re Serv. Corp. Int'l*, 85 S.W.3d 171, 174 (Tex. 2002) (orig. proceeding).

"Even substantially invoking the judicial process does not waive a party's arbitration rights unless the opposing party proves that it suffered prejudice as a result." *In re Bruce Terminix Co.*, 988 S.W.2d 702, 704 (Tex. 1998). The arbitration opponent must provide proof of prejudice to overcome the strong presumption against waiver. *In re Vesta*, 192 S.W.3d at 763. In the context of waiver of an arbitration right, "prejudice" relates to the inherent unfairness in terms of delay, expense, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue. *Perry Homes*, 258 S.W.3d at 597. A party cannot attempt to have it both ways by switching between litigation and arbitration to its own advantage. *See Okorafor*, 295 S.W.3d at 40 (citing *In re Fleetwood Homes of Texas, L.P.*, 257 S.W.3d 692, 694 (Tex. 2008)).

To support their position that Cooper substantially invoked the judicial process, appellees assert that Cooper "inexplicably delayed" moving to compel

20

arbitration until May 2014, twenty-eight months after it was sued. Appellees further contend that Cooper participated in extensive discovery related to the merits. They point out that Cooper sought admissions that Metro is "seeking to void and/or avoid the transfers incident to the creations of the [trust]" and that Pneumo Abex did "not owe a duty to [Metro] to ensure that it obtained consideration that was at least equal to the value" of Cooper's obligations. Appellees argue that those requests relate directly to their claims of fraudulent transfer and tortious interference.

They also point to Cooper's request for the production of "all documents and communications that show what amount would have constituted 'equivalent value' with respect to the settlement of the New York Lawsuit" and "all documents (if any) in which Whitman Insurance Company . . . is identified, as an entity and/or a party that is entitled to indemnification . . . pursuant to the terms of the SPA." Appellees declare that they have produced more than 21,000 documents, and argue that Cooper is trying to have it both ways by moving to compel arbitration only after receiving extensive discovery responses. The affidavit of appellees' counsel states that, "[t]o date, [appellees'] attorneys and staff have spent over 9,000 hours working on the lawsuit and incurred approximately $3,500,000 in fees and $94,000 in other costs." Appellees also argue that Cooper substantially invoked the judicial process by moving for a continuance and agreeing to an extension of discovery.

We disagree with appellees' position that Cooper substantially invoked the judicial process. In holding that substantial invocation had occurred in *Perry Homes*, the Supreme Court of Texas noted the extensive discovery propounded by the movants but stated that discovery is not the only measure of waiver under the totality-of-the-circumstances test. *Perry Homes*, 258 S.W.3d at 596.[15] The court

---

[15] *See also G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 514 (Tex.

21

then pointed out that the movants had objected stridently to arbitration before changing their minds and seeking arbitration shortly before the trial setting. *Id.* The court also invoked the rule that one cannot wait until the eve of trial to request arbitration, observing that "most of the discovery in the case had already been completed before [movants] requested arbitration." *Id.*

The facts here are different from those in *Perry Homes* and more analogous to *In re Vesta*, in which the supreme court held that arbitration had not been waived. 192 S.W.3d at 763–64. The parties moving for arbitration in *Vesta* had litigated for two years and engaged in discovery, but they did not initially oppose arbitration. *See Perry Homes*, 258 S.W.3d at 600 (distinguishing *Vesta* on those grounds). Furthermore, the *Vesta* case was not close to trial, and the party opposing arbitration incurred most of its discovery expenses in obtaining discovery rather than providing it. *Id.*

Like the parties moving to compel arbitration in *Vesta*, Cooper did not oppose arbitration at any time during the case. In addition, although the parties had engaged in some merits discovery, this case was not on the eve of trial when Cooper filed its motion to compel arbitration in May 2014—approximately four months after Whitman joined the case as a plaintiff.[16] The record shows that during the first ten months of the case, from December 2011 to October 2012, the

---

2015) (collecting cases in which "we have declined to find waiver even when the movant itself propounded written discovery").

[16] Although appellees point to evidence (summarized above) that substantial merits discovery had occurred, the record also contains indications that the situation was not like that in *Perry Homes*, in which most discovery had been completed. According to a filing by appellees in February 2014, no "meaningful merits discovery" had yet been received from Cooper given the litigation over jurisdictional issues. In April 2014, appellees moved to modify the docket control order, stating that the parties had been "prevented . . . from being able to engage in meaningful document discovery on the merits until recently," and that "no fact-witness depositions have been taken on the merits as of this date."

22

parties were engaged in settlement negotiations and Metro sought to extend trial deadlines for that reason.[17] Much of the second year was spent on venue motions, jurisdictional motions, and mediation, which failed in November 2013. Settlement negotiations and mediation do not substantially invoke the judicial process, nor are they inconsistent with a desire to arbitrate. *See Tex. Residential Mort., L.P. v. Portman*, 152 S.W.3d 861, 863–64 (Tex. App.—Dallas 2005, no pet.). Likewise, venue and jurisdictional motions do not constitute substantial invocation of the judicial process because they do not relate to the merits of the case. *See Granite*, 130 S.W.3d at 367; *Deep Water Slender Wells, Ltd. v. Shell Intern. Exploration & Prod., Inc.,* 234 S.W.3d 679, 695 (Tex. App.—Houst.[14th Dist.] 2007, pet. denied) ("A dismissal of all claims to enforce a clause requiring litigation in another forum is a determination that the merits of the claims should be determined elsewhere; therefore, enforcement of such a forum-selection clause is a nonmerits basis for dismissal.").

Appellees cite *Tuscan Builders, LP v. 1437 SH6 L.L.C.*, 438 S.W.3d 717 (Tex. App.—Houston [1st Dist.] 2014, pet. denied), a case in which the First Court of Appeals held that the movant substantially invoked the judicial process. Appellees assert that this case is similar because the movant in *Tuscan* waited for more than a year after the lawsuit was filed before seeking arbitration, did not accompany its answer with a notice to pursue arbitration, completed written discovery on the merits, inspected property at issue in the lawsuit, designated experts, and joined in a motion to extend the discovery period and postpone trial.

---

[17] Metro filed its original petition on December 30, 2011. On October 31, 2012, Metro filed an unopposed motion to modify the scheduling order and request for Rule 166 Conference. Metro asserted that the "parties have been engaged in extensive settlement negotiations in an effort to resolve this case. Because the parties' efforts have been focused on resolving the matter short of litigating the issue, the parties request an extension and modification of this Court's docket control order."

*Id.* at 722–23.

This case is distinguishable from *Tuscan Builders*. The party seeking to compel arbitration in *Tuscan Builders* filed a third-party action and conducted a building inspection that likely would not have been available in arbitration. *Id.* at 723. The court concluded that the motion to compel arbitration was "more consistent with a late-game tactical decision than an intent to preserve the right to arbitrate." *Id.* at 722. In this case, by contrast, Cooper did not file counterclaims, and appellees do not contend that any merits discovery obtained would not have been available in arbitration. Appellees also "do[] not allege that the discovery already conducted would not be useful in arbitration." *In re Vesta*, 192 S.W.3d at 763; *see also Granite*, 130 S.W.3d at 367 ("Propounding discovery will not, in and of itself, result in waiver of the right to compel arbitration"). Cooper's twenty-eight-month delay is but one factor, which by itself is insufficient to waive the right to arbitrate. *See In re Serv. Corp. Int'l*, 85 S.W.3d at 174; *see also Granite*, 130 S.W.3d at 367 ("Length of delay alone is not a basis for inferring waiver.").

Cooper is in court because appellees sued it, and Cooper did not seek disposition on the merits. *See G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 512–13 (Tex. 2015) (noting similar factors in holding right to arbitrate had not been waived). Appellees have not shown that Cooper obtained discovery it otherwise would not have obtained, and this case was not on the eve of trial. As for the expenses appellees incurred in prosecuting their suit, the affidavit does not delineate which costs were incurred in litigating against Cooper and which costs were incurred in litigating against the other named defendants. Nor does it address which costs were incurred in obtaining or responding to discovery. The costs thus likely include those associated with litigating the claims against the other named defendants and those associated with appellees' efforts at obtaining

24

discovery from Cooper. The record does not demonstrate the extent to which appellees "pre-trial costs were . . . self-inflicted." *In re Vesta*, 192 S.W.3d at 763. Accordingly, we hold appellants have not shown that Cooper unequivocally waived its right to arbitration by substantially invoking the judicial process. *Perry Homes*, 258 S.W.3d at 593.

Having concluded that under the totality of the circumstances, Cooper did not substantially invoke the judicial process, we need not address whether appellees suffered prejudice. We sustain Cooper's second and third issues and hold the trial court erred to the extent it ruled that Cooper waived its right to arbitration of appellees' claims.

## CONCLUSION

For these reasons, the trial court erred in denying the Cooper appellants' motion to compel arbitration. We reverse the trial court's order denying the motion, render judgment ordering arbitration of appellees' claims against the Cooper defendants who are parties to this appeal, and remand this case to the trial court for further proceedings consistent with this opinion, including the grant of an appropriate stay. *See* Tex. Civ. Prac. & Rem. Code Ann. § 171.025(a) (West 2011).

/s/    J. Brett Busby
        Justice

Panel consists of Justices Jamison, Busby, and Brown.