**Reversed and Remanded and Memorandum Opinion filed May 2, 2023.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-21-00734-CV

---

### 1776 AMERICAN PROPERTIES VI, LLC AND JEFF FISHER, Appellants

### V.

### FIRST CHAPEL DEVELOPMENT, LLC, Appellee

---

**On Appeal from the 80th District Court
Harris County, Texas
Trial Court Cause No. 2018-52489**

---

## MEMORANDUM OPINION

Appellants 1776 American Properties VI, LLC and Jeff Fisher bring this interlocutory appeal from the trial court's denial of their motion to compel arbitration. Appellee First Chapel Development, LLC has sued appellants over a real estate transaction. In a single issue, appellants assert that the dispute among the parties is subject to an arbitration provision in the transaction agreement and that First Chapel failed to establish either that appellants waived the right to arbitrate or that First Chapel would be prejudiced by submitting the dispute to

arbitration. We reverse and remand.

## *Background*

In September 2016, 1776 and First Chapel entered into an agreement regarding the construction and sale of a house on a piece of property. Fisher signed the contract on behalf of 1776, and Dennis Bailey signed as president of First Chapel. The property at issue was owned by 1776 at the time the agreement was signed but was sold to First Chapel as part of the agreement in order for First Chapel to obtain financing for the construction project. After construction of the house, 1776 and First Chapel were to split proceeds from the sale of the property to a third party. However, as alleged in First Chapel's original petition, filed August 17, 2018, after construction was completed and a buyer was found, a cloud was discovered on the title to the property that caused the loss of the sale and ultimately loss of the property itself. First Chapel further asserted that Fisher operated 1776 as his alter ego and alleged claims against both for breach of contract, fraudulent inducement, common law fraud, constructive fraud, negligent misrepresentation, and breach of the duty of good faith and fair dealing.

1776 filed an answer on September 11, 2018, which included only a general denial, but Fisher filed a special appearance, asserting that the trial court did not have general or specific personal jurisdiction over him. The trial court denied the special appearance on January 30, 2019, Fisher appealed, and this court affirmed the trial court's ruling. *Fisher v. First Chapel Dev. LLC*, No. 14-19-00111-CV, 2021 WL 2154108, at *1 (Tex. App.—Houston [14th Dist.] May 27, 2021, no pet.) (mem. op.). Fisher thereafter filed his original answer, which also included only a general denial.

On July 26, 2021, 1776 and Fisher filed a motion to compel arbitration. This was apparently the first assertion of a right or desire to arbitrate made in the

2

proceedings. The agreement between First Chapel and 1776 contains the following arbitration clause:

> Any legal dispute relating to this Agreement or any performance or lack thereof relating to either party's obligations under this Agreement will be resolved through binding arbitration in Houston, Texas conducted by the American Arbitration Association ("AAA") by having both parties agree to appoint and accept the decision of the mutually appointed arbitrator, and not by or in a court of law.

First Chapel filed a response to the motion, acknowledging the arbitration clause but arguing that 1776 had waived the right to compel arbitration by substantially invoking the judicial process to First Chapel's detriment, including by waiting a prolonged period to raise the issue, filing a third-party petition against Westcor Land Title Insurance Company, and participating in discovery. First Chapel also asserted that Fisher was not covered by the arbitration clause because he was not a party to the agreement, which he signed as "Managing Member" of 1776. The trial court heard additional argument on the arbitration issue in two hearings and ultimately denied the motion.

### *Governing Law*

We review a trial court's denial of a motion to compel arbitration for an abuse of discretion. *See Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). We defer to the trial court's factual determinations if they are supported by evidence, but we review its legal determinations de novo. *Id*. A party moving to compel arbitration must establish that (1) there is a valid arbitration agreement and (2) the claims asserted fall under the agreement. *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 605 (Tex. 2005). A trial court's determination of whether there is a valid arbitration agreement is a question of law that we review de novo. *See J.M. Davidson, Inc. v. Webster*, 128 S.W.3d 223, 227 (Tex. 2003). The law recognizes a

strong presumption in favor of arbitration. *See G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 521 (Tex. 2015). This presumption "is so compelling that a court should not deny arbitration 'unless it can be said with positive assurance that an arbitration clause is not susceptible of an interpretation which would cover the dispute at issue.'" *Prudential Secs. Inc. v. Marshall*, 909 S.W.2d 896, 899 (Tex. 1995) (quoting *Neal v. Hardee's Food Sys., Inc.*, 918 F.2d 34, 37 (5th Cir. 1990)). Accordingly, we resolve any doubts about an arbitration agreement's scope in favor of arbitration. *In re FirstMerit Bank, N.A.*, 52 S.W.3d 749, 753 (Tex. 2001).

If the party seeking arbitration meets its burden of presenting evidence of an arbitration agreement that governs the dispute between the parties, the burden then shifts to the party opposing arbitration to present evidence that the agreement was procured in an unconscionable manner, induced or procured by fraud or duress, or that the party seeking arbitration waived its right under the agreement. *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex. 1999) (per curiam) (orig. proceeding), *abrogated on other grounds by In re Halliburton Co.*, 80 S.W.3d 566 (Tex. 2002) (orig. proceeding); *In re Media Arts Grp., Inc.*, 116 S.W.3d 900, 906 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding). A party's right to arbitrate may be waived by substantially invoking the judicial process to the other party's detriment. *Perry Homes v. Cull*, 258 S.W.3d 580, 589–90 (Tex. 2008). A party asserting implied waiver as a defense to arbitration has the burden to prove that (1) the other party has substantially invoked the judicial process, which is conduct inconsistent with a claimed right to compel arbitration, and (2) the inconsistent conduct has caused it to suffer detriment or prejudice. *G.T. Leach*, 458 S.W.3d at 511–12. Because the law favors and encourages arbitration, this hurdle is a high one. *Id.*

4

Whether waiver has occurred depends on the totality of the circumstances. *RSL Funding, LLC v. Pippins*, 499 S.W.3d 423, 430 (Tex. 2016). The analysis may involve numerous factors, including whether the party asserting the right to arbitrate was plaintiff or defendant in the lawsuit, how long the party waited before seeking arbitration, the reasons for any delay, how much discovery and other pretrial activity the party conducted before seeking arbitration, whether the party sought disposal of claims on the merits, whether the party asserted affirmative claims for relief, the amount of time and expense the parties have expended in litigation, and whether the discovery conducted would be unavailable or useful in arbitration. *Id*.

Generally, no one factor is dispositive. *Id*. Parties seeking to arbitrate have taken several different types of action without substantially invoking the judicial process, such as filing suit, conducting discovery, noticing depositions, taking depositions, agreeing to trial settings, asserting defensive claims, and moving for procedural disposition. *Id*. While delay by the party seeking to compel arbitration may be a factor, the supreme court has found no waiver in cases with delays as long as eight months and even two years. *Id*. (citing *In re Fleetwood Homes of Tex., L.P.*, 257 S.W.3d 692, 694 (Tex. 2008), and *In re Vesta Ins. Grp., Inc.*, 192 S.W.3d 759, 763 (Tex. 2006)).

### *Analysis*

In their briefing in the trial court, 1776 and Fisher argued that the parties entered into an agreement containing an arbitration clause and the clause governed the claims made in this case including the tort claims. *See, e.g.*, *Taylor Morrison of Tex., Inc. v. Skufca as Next Friend of KSX*, No. 21-0296, 2023 WL 443852, at *1–2 (Tex. Jan. 27, 2023) (per curiam) (explaining that a litigant who sues based on a contract subjects himself to the contract's terms, including any arbitration

5

provision); *Jody James Farms, JV v. Altman Grp., Inc.*, 547 S.W.3d 624, 637 (Tex. 2018) ("When a claim depends on the contract's existence and cannot stand independently—that is, the alleged liability 'arises solely from the contract or must be determined by reference to it'—equity prevents a person from avoiding the arbitration clause that was part of that agreement.") (quoting *In re Weekley Homes, L.P.*, 180 S.W.3d 127, 132 (Tex. 2005)); *In re J.D. Edwards World Sols. Co.*, 87 S.W.3d 546, 550–51 (Tex. 2002) (holding fraudulent inducement claims were within scope of arbitration clause). In response, First Chapel did not dispute the existence or validity of the arbitration clause or that it covered the claims against 1776. Instead, First Chapel argued that (1) Fisher had no right to compel arbitration because he was not a party to the agreement and was sued in his individual capacity, and (2) both 1776 and Fisher waived the right to compel arbitration by substantially invoking the judicial process.

**Is Fisher entitled to arbitrate?** As stated, in its response, First Chapel briefly asserted that Fisher was not covered by the arbitration clause simply because he was not a party to the agreement, which he signed as "Managing Member" of 1776 and not apparently in his individual capacity. On this topic in its appellate brief, First Chapel merely states without explanation that "the claims against FISHER do not fall within the arbitration clause." Although, generally, a nonsignatory may not invoke an arbitration clause, courts have recognized circumstances under which a nonsignatory may enforce an arbitration clause against a signatory. *See, e.g.*, *Branch L. Firm L.L.P. v. Osborn*, 532 S.W.3d 1, 13 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) (listing six theories under which nonsignatories may compel arbitration) (citing *In re Kellogg Brown & Root, Inc.*, 166 S.W.3d 732, 739 (Tex. 2005) (orig. proceeding)). One such circumstance—and the one relied upon by Fisher to establish that the claims

6

against him fall under the arbitration agreement—is that agents of signatories may sometimes enforce arbitration clauses when sued in their individual capacity for conduct related to the agreement containing the clause. *See Jody James Farms*, 547 S.W.3d at 635. This agency theory is premised in part on the notion that "when an agreement between two parties clearly provides for the substance of a dispute to be arbitrated, one cannot avoid it by simply pleading that a nonsignatory agent . . . was pulling the strings." *In re Kaplan Higher Educ. Corp.*, 235 S.W.3d 206, 209 (Tex. 2007); *accord Jody James Farms*, 547 S.W.3d at 635; *In re Merrill Lynch Tr. Co. FSB*, 235 S.W.3d 185, 188–89 (Tex. 2007) (orig. proceeding); *In re Houston Progressive Radiology Assocs.*, 474 S.W.3d 435, 446–47 (Tex. App.—Houston [14th Dist.] 2015, no pet.). First Chapel is therefore incorrect that Fisher was not covered by the arbitration clause simply because he was not a party to the agreement.

Moreover, the existence of an agency relationship between 1776 and Fisher is not in dispute in the present case. Indeed, First Chapel alleged such a relationship in its petition when it asserted that it entered the "contractual transaction with [1776] through Jeff Fisher." *See, e.g.*, *In re Wells Fargo Bank, N.A.*, 300 S.W.3d 818, 825 (Tex. App.—San Antonio 2009, no pet.) ("Because the parties in this court do not dispute that the nonsignatories were acting as agents of Wells Fargo and each of their allegedly wrongful acts relate to their behavior as agents of Wells Fargo, we conclude relators were entitled to enforce the arbitration agreement.").[1] The trial court erred to the extent it denied the motion to arbitrate on

---

[1] First Chapel went even further and also alleged that Fisher used 1776 as his alter ego and that "[t]he separate identities of 1776 and Fisher must be disregarded and the two should be treated as the same" in regards to the transaction. *See generally Branch L. Firm*, 532 S.W.3d at 13 (listing alter ego among the circumstances under which a party may assert a right to arbitration). Alter ego appears to be a disputed issue in this case, whereas agency does not. We further note that First Chapel made all of its claims against both Fisher and 1776, all of its claims relate to the agreement containing the arbitration clause, and First Chapel has not asserted

the ground that Fisher could not compel arbitration because he signed the agreement only as a representative of 1776.

**Did 1776 and Fisher substantially invoke the judicial process?** We begin our examination of whether 1776 and Fisher substantially invoked the judicial process by considering the time that the case was on file before the issue of arbitration was raised. As set forth above, First Chapel filed suit on August 17, 2018 and 1776 filed its answer on September 11, 2018. The motion to compel was filed on July 26, 2021. However, as also explained above, in the interim, Fisher filed a special appearance which was then subject to an appeal in this court. As First Chapel's counsel acknowledged in the hearings on the motion to compel, the case "sat quite some time for this matter to have Jeff Fisher['s] appeal taken care of" and "things were held in abeyance until we got the appeal back." The appellate judgment issued on May 27, 2021. Thus, although the case was on file for almost three years before the motion to compel was filed, most of that time was occupied by proceedings and delays related to Fisher's special appearance. The special appearance was filed less than three months after the original petition, and the motion to compel was filed less than two months after the appellate judgment issued.

However, the litigation was not wholly devoid of activity prior to the filing of the motion to compel arbitration. In its response to the motion, First Chapel referenced the following activity by 1776 and Fisher occurring prior to the filing of the motion: Fisher filed a special appearance, 1776 filed a third-party petition and a motion for default judgment against Westcor Land Title Insurance Company, all parties attended court-ordered mediation and 1776 settled with Westcor, and 1776 participated in a deposition (apparently of Bailey, First Chapel's president). In its

otherwise in either its response to the motion or its appellate brief.

8

appellate brief, First Chapel also asserts that 1776 sought continuances and designated its experts. First Chapel did not attach any evidence to its response and does not offer any citations in its brief.

The filing of Fisher's special appearance and subsequent appeal were efforts to avoid litigation rather than participate in it and thus did not substantially invoke the litigation process. *See In re Serv. Corp. Int'l*, 85 S.W.3d 171, 175 (Tex. 2002); *see also Cooper Indus., LLC v. Pepsi-Cola Metro. Bottling Co.*, 475 S.W.3d 436, 451 (Tex. App.—Houston [14th Dist.] 2015, no pet.) ("[V]enue and jurisdictional motions do not constitute substantial invocation of the judicial process because they do not relate to the merits of the case."). Similarly, the filing of a third-party petition and motion for default judgment against Westcor and ultimate settlement with Westcor did not substantially invoke the judicial process in relation to the claims by First Chapel. *See RSL Funding*, 499 S.W.3d at 431 (holding RSL's conduct in litigation regarding one party was not relevant to question of whether RSL waived its arbitration rights with other parties); *Kennedy Hodges, L.L.P. v. Gobellan*, 433 S.W.3d 542, 545 (Tex. 2014) (per curiam) ("[A] party who litigate[s] one claim with an opponent d[oes] not substantially invoke the litigation process for a related yet distinct claim against another party with whom it ha[s] an arbitration agreement.").[2] First Chapel also does not suggest how it was prejudiced by 1776's and Fisher's conduct in relation to Westcor. *See Kennedy Hodges*, 433 S.W.3d at 545 ("In this context, prejudice is 'inherent unfairness in terms of delay,

---

[2] In *Tuscan Builders, LP v. 1437 SH6 L.L.C.*, the First Court of Appeals held that the party seeking arbitration had waived that right in part by filing a third-party petition. 438 S.W.3d 717, 722–23 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). *Tuscan Builders* is distinguishable from the present case, however, because in that case, the First Court emphasized that the party seeking arbitration had used the joining of the third party to obtain discovery and litigation advantages (such as a building inspection) that it likely would not have been able to obtain in arbitration. *Id.*; *see also Cooper Indus.*, 475 S.W.3d at 452 (distinguishing *Tuscan* on similar grounds). First Chapel makes no such assertion in the present case.

9

expense, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue.'") (quoting *Perry Homes*, 258 S.W.3d at 597).

The fact that First Chapel apparently participated in the court-ordered mediation also does not establish waiver of the right to arbitrate because "[s]ettlement negotiations and mediation do not substantially invoke the judicial process, nor are they inconsistent with a desire to arbitrate." *Cooper Indus.*, 475 S.W.3d at 451. Also, participation in one deposition and the designation of experts was relatively insignificant conduct in this context that did not substantially invoke the litigation process, particularly where First Chapel did not allege or demonstrate that such discovery would not be useful in arbitration. *See G.T. Leach*, 458 S.W.3d at 514 (indicating party's designation of experts was of little importance in the analysis because it was defensive in nature and necessary to preserve the party's rights); *In re Vesta*, 192 S.W.3d. at 763–64 (holding depositions and other discovery did not substantially invoke the litigation process particularly where party resisting arbitration did not allege the discovery would not be useful in litigation).

First Chapel did not raise the issue of continuances below and provides little information regarding them on appeal, except to say that 1776 "participated in . . . motions for continuance." Joining motions for continuances typically is not sufficient to constitute a substantial invocation of the judicial process, although it can be taken into account in assessing the delay. *See, e.g.*, *Faust Distrib. Co. v. Verano*, No. 01-21-00460-CV, 2022 WL 3588423, at *9 (Tex. App.—Houston [1st Dist.] Aug. 23, 2022, no pet.) (mem. op.) (holding participation in motions for continuance did not constitute substantial invocation of the judicial process and did not cause opposing party prejudice); *Garg v. Pham*, 485 S.W.3d 91, 110 (Tex.

App.—Houston [14th Dist.] 2015, no pet.) (explaining that motions for trial continuance do not relate to the merits of the case and thus do not invoke the judicial process).

At the two hearing dates where the motion to compel was discussed, First Chapel's counsel additionally mentioned that an assignee of 1776's rights in the agreement, Reclamation American Group Corporation, had filed a separate lawsuit against First Chapel. In its appellate brief, First Chapel leans into the suggestion that Reclamation's activity in the other lawsuit can be ascribed to 1776 and Fisher in the present lawsuit and thus constituted substantial invocation of the judicial process. First Chapel notes that 1776 and Fisher have opposed consolidation of the two cases and that Reclamation was mentioned in the settlement agreement between 1776 and Westcor. First Chapel further asserts that 1776 and Fisher's counsel in the present lawsuit is also the attorney, director, and registered agent for Reclamation and was disqualified from acting as an attorney in that case because he was a material witness. Beyond allegation and conjecture, however, First Chapel has not presented evidence establishing that either 1776 or Fisher is responsible for Reclamation's conduct in the other lawsuit. Indeed, First Chapel does not cite the record or any law in support of its contentions regarding Reclamation and the other lawsuit. "Texas law presumes that two separate corporations are indeed distinct entities," and a "party seeking to ascribe one corporation's actions to another by disregarding their distinct corporate entities must prove this allegation." *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 798 (Tex. 2002). The record does not support assigning Reclamation's actions in the other lawsuit to 1776 and Fisher in this lawsuit.

In assessing the ruling on the motion to compel arbitration, it is also important to note what 1776 and Fisher did not do—they did not file suit, pursue

11

affirmative relief, or seek disposition on the merits against First Chapel; they did not engage in extensive discovery; and they did not wait until the eve of trial to request arbitration or at any point oppose arbitration. *See RSL Funding*, 499 S.W.3d at 430. Based on the record before us, we conclude that neither 1776 nor Fisher substantially invoked the judicial process to First Chapel's detriment. *See Perry Homes*, 258 S.W.3d at 589–90. Accordingly, they did not waive their right to arbitration and the trial court erred in holding otherwise.

## *Conclusion*

We sustain 1776 and Fisher's sole issue, reverse the trial court's order denying the motion to compel, and remand for entry of an order compelling arbitration and staying the proceedings in the trial court pending completion of the arbitration proceedings. *See Baby Dolls Topless Saloons, Inc. v. Sotero*, 642 S.W.3d 583, 588 (Tex. 2022); *Khancepts, LLC v. Lopez*, No. 14-19-00692-CV, 2020 WL 6278573, at *4 (Tex. App.—Houston [14th Dist.] Oct. 27, 2020, no pet.) (mem. op.).

/s/      Frances Bourliot
Justice

Panel consists of Justices Bourliot, Hassan, and Poissant.