**Opinion issued May 15, 2014**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-13-00685-CV

————————————

**TUSCAN BUILDERS, LP, Appellant**

**V.**

**1437 SH6 L.L.C. D/B/A SWEETWATER AESTHETIC SPA
& WELLNESS CENTER, SHELENA C. LALJI, M.D., P.A. D/B/A
DR. SHEL WELLNESS & MEDICAL SPA AND LALJI DENTAL,
P.C. D/B/A LAKE POINTE DENTAL AND SPECIALTY, Appellees**

On Appeal from the 151st District Court
Harris County, Texas
Trial Court Case No. 2012-33706

## OPINION ON REHEARING

Appellant Tuscan Builders, LP has moved for rehearing and en banc

consideration. We grant rehearing, withdraw our opinion and judgment of January

30, and issue the following in their stead. We dismiss as moot Tuscan's motion for en banc consideration. Our disposition of the appeal remains unchanged.

In this construction dispute, a builder appeals the trial court's order denying its motion to compel arbitration against the building's owners. The builder contends that the trial court erred in finding that the builder had waived enforcement of an arbitration clause by invoking the judicial process and delaying its effort to compel arbitration for more than a year. Finding no error, we affirm.

## Background

*The contract dispute*

The commercial building owners, 1437 SH6 L.L.C. d/b/a Sweetwater Aesthetic Spa & Wellness Center, Shelena C. Lalji, M.D., P.A. d/b/a Dr. Shel Wellness & Medical Spa, and Lalji Dental, P.C. d/b/a Lake Pointe Dental and Specialty (collectively, Sweetwater) sued Tuscan, the builder, for breach of warranty associated with alleged construction defects. Sweetwater had contracted with a construction design team, the Mirador Group, Inc., and an architect, Todd Blitzer, to design a building suitable for a dental office, a wellness clinic, and other health-related businesses. Sweetwater's design services agreement with Mirador provides that venue for any suit "shall be in a Texas State District Court in Harris County, Texas." The design agreement incorporates by reference specific provisions of the "Standard Form of Agreement between Owner and Architect

2

(AIA Document B141–1997)," but it expressly excludes "Sections 1.3.4, Mediation and 1.3.5, Arbitration."

Sweetwater hired Tuscan to construct the building according to Mirador's design specifications. Tuscan prepared the construction contract using AIA Document A101–1997, the "Standard Form of Agreement between Owner and Contractor where the basis of payment is a stipulated sum." The parties' construction contract incorporates by reference an industry form document—AIA Document A201–1997, the "General Conditions of the Contract for Construction" [General Conditions]—but it does not attach a copy of that document. Like AIA Document B141–1997, incorporated into the design agreement, A201–1997 calls for mediation in the first instance, followed by arbitration. Unlike the design agreement, the construction contract does not exclude the AIA Document's arbitration provisions that were incorporated by reference, but not attached to the contract. The pertinent sections of A201–1997 provide:

> Claims not resolved by mediation shall be decided by arbitration which, unless the parties mutually agree otherwise, shall be in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association currently in effect. The demand for arbitration shall be filed in writing with the other party to the Contract and with the American Arbitration Association, and a copy shall be filed with the Architect.

After it moved in, Sweetwater noticed water leaking into the building. It informed Mirador and Tuscan of the problem, and they attempted to repair the

3

leaks. During a rainstorm in July 2010, however, significant water leaks appeared in the exterior walls and roof, causing substantial damage to the structure and interior walls. Sweetwater again sought to have Mirador and Tuscan repair the building, but Sweetwater was not satisfied with the results.

*Course of proceedings*

In June 2012, Sweetwater sued Mirador, Tuscan, and Blitzer for negligence, breach of contract, and breaches of express and implied warranties, as well as statutory claims under the Texas Deceptive Trade Practices Act. Tuscan answered the suit on June 29. Tuscan denied Sweetwater's allegations, raised several specific defenses, and made a verified denial; it did not mention arbitration in the filing. In November, Tuscan sued its five subcontractors, seeking indemnification under the indemnification provisions in each subcontractor agreement. Tuscan sued each subcontractor for negligence, breach of contract, and breach of warranty. Sweetwater later amended its petition to include its own claims against the subcontractors. The subcontractors answered, and several demanded a jury trial. In addition to pursuing written discovery, the subcontractors also sought to inspect the Sweetwater property, pursuant to Texas Rule of Civil Procedure 196.7. Tuscan participated with the third-party defendants in the inspection.

The trial court's docket control order called for the discovery period to end in March 2013 and trial to commence in April 2013. In January 2013, Tuscan

4

joined Sweetwater in filing an agreed motion for continuance. The joint motion requested the continuance for the "opportunity to conduct discovery and identify the relevant issues." Tuscan did not mention arbitration. The trial court granted the motion and extended the discovery, motion, and pleading deadlines. It set trial to commence on September 16, 2013.

On June 6, 2013, Tuscan, the other defendants, and the third-party defendants moved to extend the mediation deadline complaining that, before mediating the dispute, they required additional information concerning the various components of Sweetwater's alleged damages, responses to additional interrogatories, answers to requests for admissions they had propounded, and the depositions of Sweetwater's corporate representatives and management agents, which, the motion represented, were scheduled for July 2 and 8.

By July 14, the expert witnesses had been designated and the expert designation deadlines for all parties had passed; approximately one month remained of the discovery period. The parties had completed their paper discovery. On that date, Tuscan invoked the arbitration provision incorporated by reference into the construction contract and included with its motion an unsigned copy of the General Conditions form containing that provision.

The trial court held an evidentiary hearing on Tuscan's motion to compel arbitration and denied the motion on August 1.

**Discussion**

Tuscan challenges the trial court's ruling, contending that it erred in denying Tuscan's motion to compel arbitration because the evidence does not establish that Tuscan had waived its contractual right to arbitrate by substantially invoking the judicial process.[1]

*Applicable Law and Standard of Review*

Waiver is the intentional relinquishment of a known right or intentional conduct inconsistent with claiming that right. *Jernigan v. Langley*, 111 S.W.3d 153, 156 (Tex. 2003); *Interconex, Inc. v. Ugarov*, 224 S.W.3d 523, 533 (Tex. App.—Houston [1st Dist.] 2007, no pet.). "[A] party waives an arbitration clause by substantially invoking the judicial process to the other party's detriment or prejudice." *Perry Homes v. Cull*, 258 S.W.3d 580, 589–90 (Tex. 2008) (footnote omitted). A party substantially invokes the judicial process if it takes specific and deliberate actions that are inconsistent with the right to arbitrate or if it actively tries, but fails to achieve, a satisfactory result through litigation before turning to arbitration. *In re Christus Spohn Health Sys. Corp.*, 231 S.W.3d 475, 478–79 (Tex. App.—Corpus Christi 2007, orig. proceeding); *see In re Vesta Ins. Grp., Inc.*,

---

[1] Tuscan also contends on appeal that it established the validity of the arbitration agreement. The trial court raised questions concerning the validity during the evidentiary hearing, but it but did not base its ruling on any specific ground. For purposes of this appeal, we assume that a valid arbitration agreement exists between Tuscan and Sweetwater.

192 S.W.3d 759, 763 (Tex. 2006) (orig. proceeding). Prejudice refers to the inherent unfairness caused by "a party's attempt to have it both ways by switching between litigation and arbitration to its own advantage." *Perry Homes*, 258 S.W.3d at 597.

Whether a party has participated in the litigation process and thus waived the right to arbitrate is a question of law for the court. *Id.* at 587. We apply a strong presumption against waiver of arbitration and resolve any doubt on the issue in favor of arbitration. *Id.* at 584; *see In re Bruce Terminix Co.*, 988 S.W.2d 702, 705 (Tex. 1998).

For a waiver to have occurred, the appellant "must, at the very least, [have] engage[d] in some overt act in court that evince[d] a desire to resolve the [same] arbitrable dispute through litigation rather than arbitration." *Haddock v. Quinn*, 287 S.W.3d 158, 177 (Tex. App.—Fort Worth 2009, pet. denied). In assessing whether Tuscan waived its right to arbitrate, we consider whether Tuscan's conduct in the litigation portrays the kind of "aggressive litigation strategy" that substantially invokes the litigation process. *See Okorafor v. Uncle Sam & Assocs.*, 295 S.W.3d 27, 40 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *see also In re Christus Spohn Health Sys. Corp.*, 231 S.W.3d at 479 (explaining that actions inconsistent with right to arbitrate may include "some combination of filing an answer, setting up a counterclaim, pursuing extensive discovery, moving for a

7

continuance, and failing to timely request arbitration") (citing *Cent. Nat'l Ins. Co. of Omaha v. Lerner*, 856 S.W.2d 492, 494 (Tex. App.—Houston [1st Dist.] 1993, orig. proceeding)). In determining whether a party waived an arbitration clause, the courts can consider, among other factors: (1) whether the movant for arbitration was the plaintiff (who chose to file in court) or the defendant (who merely responded), (2) when the movant learned of the arbitration clause and how long the movant delayed before seeking arbitration, (3) the amount of the movant's pretrial activity related to the merits rather than arbitrability or jurisdiction, (4) the amount of discovery conducted, and (5) whether the movant sought judgment on the merits. *See Perry Homes*, 258 S.W.3d at 591–92; *In re Hawthorne Townhomes, L.P.*, 282 S.W.3d 131, 141 (Tex. App.—Dallas 2009, no pet.). We analyze whether waiver occurred based on the totality of the circumstances presented in each case. *See In re Citigroup Global Mkts., Inc.*, 258 S.W.3d 623, 625 (Tex. 2008); *Okorafor*, 295 S.W.3d at 38; *Interconex, Inc.*, 224 S.W.3d at 533.

*The* Perry Homes *Factors*

Tuscan began as a defendant in the suit. Early in the litigation, however, Tuscan also became a third-party plaintiff by suing its subcontractors. Although a party invokes the judicial process when it sues in court, the filing of a third-party action, standing alone, may not be enough to constitute waiver of an agreement to arbitrate. In *D.R. Horton-Tex., Ltd. v. Drogseth*, for example, the Fort Worth

8

Court of Appeals held that the defendant did not waive its right to arbitrate by filing a third-party action because the defendant concurrently had moved in the trial court to abate the case and submit it to binding arbitration. No. 02–12–00435–CV, 2013 WL 3377121, at *5–6 (Tex. App.—Fort Worth July 3, 2013, no pet.) (mem. op.). In its motion to compel arbitration filed six weeks later, the defendant explained that it had filed the third-party petition before the hearing on its motion to compel to preserve its claims against the third-party defendants and did not intend a waiver of right to arbitration. *Id.* at *5. In contrast to the movant in *D.R. Horton*, Tuscan did not accompany its answer or its third-party claims with any notice of an intent to pursue arbitration, nor did Tuscan seek an abatement of the case pending resolution of its claim to arbitration.

Based on the record, the trial court reasonably could have found that Tuscan knew of the arbitration clause before it answered Sweetwater's suit, but that it did not reveal the existence of the arbitration agreement to Sweetwater until after Tuscan had sued third parties and the parties had conducted a property inspection and completed written discovery, including expert designations.[2] The owner-contractor agreement, prepared by Tuscan for Sweetwater's execution,

---

[2] On rehearing, Tuscan contends that we should disregard counsel's statements concerning the status of discovery in the proceedings because they are not evidence, only argument. Tuscan, however, waived any complaint about their evidentiary value by failing to object in the trial court. *See Banda v. Garcia*, 955 S.W.2d 270, 272 (Tex. 1997).

incorporates a construction industry form that incorporates by reference another clause, contained in the General Conditions form, that allows for arbitration.

The "General Conditions" form containing the arbitration clause declares that, "The Contract Documents consist of the Agreement between Owner and Contractor . . ., Conditions of the Contract (General, Supplementary, and other Conditions), Drawings, Specifications, Addenda issued prior to execution of the Contract, other documents listed in the Agreement and Modifications issued after execution of the Contract." It further provides that "[t]he Contract Documents shall be signed by Owner and Contractor." Tuscan, however, did not provide a signed copy of the form with its motion, nor did it deny Sweetwater's assertion that it had no actual knowledge or notice of the form's contents until it received Tuscan's motion to compel.

If Tuscan's failure to attach the industry form to the construction contract did not render the arbitration provision invalid, the record, at a minimum, demonstrates that Tuscan understood the reference to its own industry form and was aware that it contained an arbitration provision, yet did not enlighten Sweetwater that its claims were subject to arbitration until Tuscan moved to compel arbitration more than a year after filing third party actions and proceeding with discovery.

Sweetwater's contract with Mirador expressly excludes any obligation to arbitrate and requires litigation in Harris County district court. As a result, Tuscan's belated invocation of the arbitration clause to conduct arbitration would delay the resolution of the dispute between Tuscan and Mirador, and would make for an inefficient, piecemeal adjudication, to the expense of Sweetwater, who has prepared its case against the defendants in a single forum. Had Tuscan promptly moved for arbitration, Sweetwater and the other defendants would have been entitled to a stay of proceedings pending arbitration; instead, the parties engaged in considerable time and expense on the road to a court trial. These circumstances make the timing of Tuscan's motion to compel more consistent with a late-game tactical decision than an intent to preserve the right to arbitrate.

Tuscan joined in motions that prolonged the discovery period and postponed the trial date and mediation deadline to allow the parties to pursue additional discovery on the merits. By the time Tuscan moved to compel arbitration—more than a year after Sweetwater filed suit—the parties had completed written discovery, designated their experts for trial, and physically inspected the building, and the trial setting was less than a month away. The need for further merits discovery served as the basis for the parties' successful requests for both the trial continuance and the extension of the mediation deadline. In opposing Tuscan's

motion to compel arbitration, Sweetwater pointed out that Tuscan would not have been likely to obtain a building inspection in an arbitral forum.

Tuscan responds that its own discovery activities were limited to written discovery. Tuscan's litigation strategy, however, enhanced its discovery efforts. By suing its subcontractor-indemnitors, Tuscan benefited from the discovery sought by these additional parties, who are aligned with it against Sweetwater. For example, Tuscan availed itself of the opportunity, made possible by the subcontractors' discovery request, to inspect the building. By bringing the subcontractors into the suit, Tuscan accomplished indirectly what it did not do directly. The record supports the trial court's conclusion that these tactics, taken together, were inconsistent with any intent to arbitrate these claims, and caused some prejudice to Sweetwater.

The purpose of the presumption against finding a waiver of contractual arbitration is to preserve the purpose of the parties' agreement to obtain a speedy and inexpensive final disposition of the disputed matter. *See Porter & Clements, L.L.P. v. Stone*, 935 S.W.2d 217, 221 (Tex. App.—Houston [1st Dist.] 1996, no pet.). Tuscan's year-long delay in invoking or even mentioning the arbitration clause gave Tuscan litigation advantages it would not have had in an arbitration proceeding. We hold that the trial court properly denied Tuscan's motion to

12

compel arbitration because Tuscan had substantially invoked the judicial process, to Sweetwater's prejudice.

## Conclusion

We hold that the trial court did not err in denying Tuscan's motion to compel arbitration. We therefore affirm the trial court's order and remand the cause for further proceedings.


Jane Bland
Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.