ACCEPTED
05-18-00140-CV
FIFTH COURT OF APPEALS
DALLAS, TEXAS
5/21/2018 12:48 PM
LISA MATZ
CLERK

Case No. 05-18-00140-CV

IN THE COURT OF APPEALS FOR THE FIFTH DISTRICT OF TEXAS

FILED IN
5th COURT OF APPEALS
DALLAS, TEXAS
5/21/2018 12:48:06 PM
LISA MATZ
Clerk

## ARCHER WESTERN CONSTRUCTION, LLC

Appellant

v.

## SOUTH TEXAS INNOVATIONS, LLC

Appellee

On appeal from the 193rd Judicial District Court of Dallas County, Texas
The Honorable Carl Ginsberg presiding

## APPELLANT'S REPLY BRIEF

Paulo Flores
State Bar No. 07164447
pflores@pecklaw.com
Timothy D. Matheny
State Bar No. 24000258
tmatheny@pecklaw.com
Tracey L. Williams
State Bar No. 24031954
twilliams@pecklaw.com
PECKAR & ABRAMSON P.C.
8080 N. Central Expwy.,
Suite 1600, LB 65
Dallas, Texas 75206
214-523-5100 (telephone)
214-521-1406 (facsimile)

# IDENTITIES OF PARTIES AND COUNSEL

## Parties

**Archer Western Construction, LLC**
Appellant/Defendant/Cross-Plaintiff/Cross-Defendant

**South Texas Innovations, LLC**
Appellee/ Defendant/Cross-Plaintiff/Cross-Defendant

**The Hanover Insurance Company**
Interested Party

## Counsel

**Archer Western Construction, LLC**
Trial and Appellate

Paulo Flores
State Bar No. 07164447
pflores@pecklaw.com
Timothy D. Matheny
State Bar No. 24000258
tmatheny@pecklaw.com
Tracey L. Williams
State Bar No. 24031954
twilliams@pecklaw.com

PECKAR & ABRAMSON P.C.
8080 N. Central Expwy.,
Suite 1600, LB 65
Dallas, Texas 75206
(214) 523-5100

**South Texas Innovations, LLC and The Hanover Insurance Company**
Trial and Appellate

Seth I. Rubinson
State Bar No. 24053908
srubinson@rubinsonlaw.com
RUBINSON LAW
1135 Heights Blvd.
Houston, Texas 77008
(832) 485-4899

[Damian W. Abreo - Mr. Abreo has withdrawn as counsel for STI and Hanover
State Bar No. 24006728
dabreo@jdkglaw.com
JOHNSON DELUCA KURISKY & GOULD
4 Houston Center
1221 Lamar St., Suite 1000
Houston, Texas 77010
(713) 652-2525]

Appellate only:

Nancy H. Elliott
State Bar No. 08701240
nelliott@zflawfirm.com
ZABEL FREEMAN
1135 Heights Blvd.
Houston, Texas 77008
(713) 802-9117

# TABLE OF CONTENTS

IDENTITIES OF PARTIES AND COUNSEL ................................................ i

INDEX OF AUTHORITIES ............................................................... iv

REPLY ............................................................................. 1

I.    Preliminary Matters ......................................................... 1

      A.    Standard of Review ..................................................... 1

      B.    Appellee cannot use evidence in this appeal that was not
            presented to the Trial Court, and all such evidence should
            be disregarded by this Court. .......................................... 2

II.   Appellee cannot validly make any argument that Archer
      expressly waived the arbitration clause. ..................................... 2

      A.    There is no evidence whatsoever of an express waiver ............. 2

      B.    There is no waiver by Archer of its waiver argument ............... 4

      C.    The "evidence" presented, allegedly in support of
            Appellee's argument of express waiver clearly does not
            rise to the level of express waiver: .................................... 6

II.   Archer did not substantially invoke the judicial process so as to
      impliedly waive the arbitration clause. ...................................... 6

III.  Appellee has not shown legal prejudice sufficient for a finding
      of an implied waiver of the arbitration clause. ............................... 16

IV.   Appellant hereby withdraws its Issue No. 1 - The trial court
      erred (or, alternatively, abused its discretion) in denying Archer
      Western's Motion to Stay the Proceeding and to Compel
      Arbitration as the arbitration clause itself prohibits waiver. .............. 18

PRAYER ............................................................................ 18

CERTIFICATE OF SERVICE ........................................................... 20

CERTIFICATE OF COMPLIANCE ........................................................ 20

# INDEX OF AUTHORITIES

**Page(s)**

**Cases**

*Apollo Theater Found., Inc. v. W. Int'l Syndication,*
No. 02 CIV 10037, 2004 U.S. Dist. LEXIS 11110 (S.D.N.Y. June 21, 2004) .................................................................................................3

*BBX Operating, LLC v. Am. Flourite, Inc.,*
No. 09-17-00245-CV, 2018 WL 651276 (Tex. App. - Beaumont February 1, 2018, no pet.).................................................................3, 14

*In re Bruce Terminix Co.,*
988 S.W.2d 702 (Tex. 1998)......................................................................4

*Cent. Educ. Agency v. Burke,*
711 S.W.2d 7 (Tex. 1986).........................................................................5

*Ellman v. J.C. Gen. Contractors,*
419 S.W.3d 516 (Tex. App. - El Paso 2013, no pet.) ................................ 15, 16

*In re Fleetwood Homes of Tex.,*
257 S.W.3d 692 (Tex. 2008).................................................................4, 10

*G.T. Leach Builders, LLC v. Sapphire V.P., L.P.,*
458 S.W.3d 502 (Tex. 2015)................................................. 4, 8, 10, 11

*Garcia v. Huerta,*
340 S.W.3d 864 (Tex.App.–San Antonio 2011, pet. denied).............................3

*Greystar, LLC v. Adams,*
426 S.W.3d 861 (Tex. App. - Dallas 2014, no pet) ...............................................2

*Henry v. Cash Biz, LP,*
No. 16-0854, 2018 WL 1022838, 2018 Tex. LEXIS 164, _ S.W.3d _ (Tex. Feb. 23, 2018)..........................................................................4

*Hogg v. Lynch, Chappell & Alsup, P.C.,*
480 S.W.3d 767 (Tex. App. - El Paso 2015, no pet.)
................................................................ 1, 2, 3, 8, 9, 10, 11, 12, 13, 14

*Okorafor v. Uncle Sam & Assocs.*,
   295 S.W.3d 27 (Tex. App. - Houston [1st Dist.], no pet.)..............................3, 15

*Perry Homes v. Cull*,
   258 S.W.3d 580 (Tex. 2008)................................................. 1, 3, 4, 7, 11, 13, 16

*Prof'l Advantage Software Solutions, Inc. v. West Gulf Mar. Ass'n Inc.*,
   No. 01-15-01006-CV, 2016 WL 2586690 (Tex. App. - Houston [1st
   Dist.] May 5, 2016, no pet.) ....................................................................14

*Triton Container Int'l, Ltd. v. Baltic Shipping Co.*,
   Civil Action No. 95-0427 C/W 95-2229, 1995 WL 729329, 1995
   U.S. Dist. LEXIS 18213 (E.D.La. Dec. 7, 1995), *aff'd*, 95 F.3d 54
   (5th Cir.1996)......................................................................................3

*Tuscan Builders, LP v. 1437 SH6 L.L.C.*,
   438 S.W.3d 717 (Tex. App. - Houston [1st Dist.] 2014, no pet.)......................14

*In re Vesta Ins. Group, Inc.*,
   192 S.W.3d 759 (Tex.2006) (per curiam)...........................................................10

*Whisennant v. Arnett*,
   339 S.W.3d 920 (Tex. App. - Dallas 2011, no pet.) .............................................5

**Other Authorities**

Tex. R. App. 38.1 ...........................................................................................5

## REPLY

**I.   PRELIMINARY MATTERS:**

**A.   STANDARD OF REVIEW**

"A reviewing court should defer to a trial court's factual findings if they are supported by the evidence, but ultimately the question whether a waiver has occurred is a question of law, which an appellate court reviews de novo."[1]

> Under a proper abuse-of-discretion review, waiver is a question of law for the court, and we do not defer to the trial court on questions of law. We do defer to a trial court's factual findings if they are supported by evidence, but there was no factual dispute here . . . This leaves only the conclusion whether such conduct constitutes prejudice, a legal question we cannot simply abandon to the trial court.[2]

In the case before this Court, there were no findings of fact by the trial court whatsoever.  In fact, the sum total of the trial court's Order, with respect to the Motion to Compel Arbitration, was:  "ON THIS DAY came to be heard Archer Western's Motion to Compel Arbitration.  Having taken the matter under advisement, the Court herby DENIES the Motion to Compel Arbitration."  As such, there are no trial court findings of fact for this Court to consider, and it reviews the trial court's action de novo, as a matter of law, for abuse of discretion.

---

[1] *Hogg v. Lynch, Chappell & Alsup, P.C.*, 480 S.W.3d 767, 780 (Tex. App. - El Paso 2015, no pet.)

[2] *Perry Homes v. Cull*, 258 S.W.3d 580, 598 (Tex. 2008).

1

**B. APPELLEE CANNOT USE EVIDENCE IN THIS APPEAL THAT WAS NOT PRESENTED TO THE TRIAL COURT, AND ALL SUCH EVIDENCE SHOULD BE DISREGARDED BY THIS COURT.**

The evidence submitted by South Texas Innovations, LLC ("Appellee") for its argument of waiver consisted of the 15 exhibits to Appellee's Response and Opposition to Archer Western Construction's Motion to Stay and Compel Arbitration ("Response"), and the testimony at hearing of Damien Abreo and Gary Haymond, as found in the Reporter's Record. All other evidence presented to this Court by Appellee, including the Supplemental Clerk's Record submitted by Appellee to this Court on April 18, 2018, with the exception of those parts duplicative of the Response exhibits, should be disregarded and not considered by this Court. Any items not presented to the trial court will not be considered by a court of appeals in its scope of review of the trial court's action.[3]

**II. APPELLEE CANNOT VALIDLY MAKE ANY ARGUMENT THAT ARCHER EXPRESSLY WAIVED THE ARBITRATION CLAUSE.**

**A. There is no evidence whatsoever of an express waiver**

There was never any evidence of express waiver presented by Appellee to the Trial Court. (In fact, as addressed next, Appellee did not even raise the issue of express waiver at the trial court level.) There could be no evidence of express

---

[3] *Greystar, LLC v. Adams*, 426 S.W.3d 861, 865 (Tex. App. - Dallas 2014, no pet.)("It is well-established an appellate court may not consider matters outside the record, which includes documents attached to a brief as an exhibit or an appendix that were not before the trial court."); *See also Hogg*, 480 S.W.3d at 787, n. 10.

waiver, as none exists, as supported by one of Appellee's own cited cases. As stated by Appellee in its Brief: "Express waiver arises when a party affirmatively indicates that it wishes to resolve the case in the judicial forum, rather than through arbitration."[4] A case relied on by Appellee in its Brief amplifies on this, and makes clear that the word "express" means what it says - express:

> A party makes an express waiver when it 'affirmatively indicates that it wishes to resolve the case in the judicial forum, rather than through arbitration.' *Okorafor v. Uncle Sam & Assocs., Inc.*, 295 S.W.3d 27, 39 (Tex.App.–Houston [1st Dist.] 2009, pet. denied); *see Triton Container Int'l, Ltd. v. Baltic Shipping Co.*, CIV.A. 95–0427, 1995 WL 729329, at *3 (E.D.La. Dec. 8, 1995), aff'd, 95 F.3d 54 (5th Cir.1996) (party's communication to opposing counsel expressly stating that it intended to settle the case and did not intend to seek arbitration, was an express waiver of the right to arbitrate); *Garcia v. Huerta*, 340 S.W.3d 864, 867 (Tex.App.–San Antonio 2011, pet. denied) (court found express waiver where party affirmatively stated in settlement agreement that it was waiving its right to enforce an arbitration agreement).[5]

As the cases cited in *Hogg* make clear - for express waiver to occur, there has to be an express statement affirmatively stating something to the effect of "I waive arbitration." Just for reference, in *Perry Homes v. Cull*, the only Texas Supreme

---

[4] Appellee's Brief at pg. 18, *citing, Okorafor v. Uncle Sam & Assocs.*, 295 S.W.3d 27, 39 (Tex. App. - Houston [1st Dist.], no pet.); *see also BBX Operating, LLC v. Am. Flourite, Inc.*, No. 09-17-00245-CV, 2018 WL 651276, at *15 (Tex. App. - Beaumont February 1, 2018, no pet.); and *Apollo Theater Found., Inc. v. W. Int'l Syndication*, No. 02 CIV 10037, 2004 U.S. Dist. LEXIS 11110, at *8 (S.D.N.Y. June 21, 2004).

[5] *Hogg*, 480 S.W.3d at 781.

Court case finding a waiver of an arbitration clause,[6] even a 79 page objection to arbitration was not found to be an *express* waiver of the arbitration clause; the Texas Supreme Court still underwent the implied waiver analysis: "But under the totality-of-the-circumstances test, discovery is not the only measure of waiver. Here, when the warranty defendants initially moved to compel arbitration, the Culls filed a 79–page response opposing it . . . ."[7] In our case, there was no evidence of express waiver argued or submitted by Appellee to the trial court, nor could there be - no such evidence exists.

## B.    There is no waiver by Archer of its waiver argument

Appellee argues, at page 20 of its Brief, "Archer Western has waived any complaint about its express waiver of arbitration by failing to raise it in the trial court and its brief." Not only does this argument have no merit whatsoever, Appellee never argued express waiver to the trial court, either in its Response or in its oral argument to the trial court. Nowhere in Appellee's Response, nor in its argument to the Court, does Appellee ever refer to, or invoke, express waiver. All

---

[6] In *Henry v. Cash Biz, LP*, 2018 WL 1022838, 2018 Tex. LEXIS 164, _ S.W.3d _, (Tex. Feb. 23, 2018), a case cited in Appellee's Response, the Texas Supreme Court noted, "We have declined to conclude that the right to arbitrate was waived in all but the most unequivocal of circumstances." The Texas Supreme Court then cites to its *Perry Homes* opinion where it did find a waiver; and then to *G.T. Leach Builders, LLC*, 458 S.W.3d at 512, *In re Fleetwood Homes of Tex.*, 257 S.W.3d 692, 694 (Tex. 2008), and *In re Bruce Terminix Co.*, 988 S.W.2d 702, 703-04 (Tex. 1998), as cases in which it did not find waiver. The Texas Supreme Court could have equally said that only one case exists in which it concluded that the right to arbitrate was waived.

[7] *Perry Homes*, 258 S.W.3d at 596.

of Appellee's argument, both in its Response,[8] as well as in its argument to the trial court,[9] addressed the concept of implied waiver, specifically: (1) substantial invocation of the judicial process; and (2) prejudice to Appellee. As Appellee states in its own Response, "It is well established that '[i]ssues not expressly presented to the trial court may not be considered on appeal as grounds for reversal[.]'"[10] It is Appellee who has never argued express waiver.

It is clear from the Reporter's Record that all the trial court judge considered was implied waiver. The judge himself stated: "I think we're just talking about invocational process."[11]

In any event, Appellant is appealing the trial court's one sentence denial of its Motion to Compel Arbitration. There is no reason to, nor is Appellant obligated to, separate out and address different subsets of waiver.

---

[8] In fact, a word search reveals the word "express" does not appear in STI's Response.

[9] All references by Mr. Rubinson in the Reporter's Record are to "substantial invocation" and "prejudice;" he never even uses the word "express," much less does he argue an express waiver, or present any evidence whatsoever of an express waiver. Mr. Rubinson mentions substantial invocation of the judicial process at RR pg. 7, line 16; pg. 8, line s 3-4; pg. 9, lines 5-6 and 16; pg. 27, line 25; and pg. 29, line 5. He only mentions "prejudice" once, at RR pg. 29, line 7, but at least he mentions it and clearly intended to put on evidence of prejudice (although it was clear insufficient). And, as stated above, "express waiver" is never even mentioned.

[10] Response at pg. 35, (citing *Cent. Educ. Agency v. Burke*, 711 S.W.2d 7, 8 (Tex. 1986); *see also Whisennant v. Arnett*, 339 S.W.3d 920, 926 (Tex. App. - Dallas 2011, no pet.); and Tex. R. App. 38.1.

[11] RR at pg. 15, lines 12-14. (It is clear from RR at pg. 7, lines 10-16 that the trial judge used "invocational" as shorthand for "substantial invocation of the judicial process.")

5

**C.    The "evidence" presented, allegedly in support of Appellee's argument of express waiver clearly does not rise to the level of express waiver:**

If somehow this Court still believes that there is any issue in this case regarding *express* waiver; this is the sum total of Appellee's "evidence," as argued in its Brief to this Court, of express waiver:

> Certainly. I had initiated two separate lawsuits on behalf of South Texas Innovations. One lawsuit was against Lennar MultiFamily Communities, which is the entity developing the projects that forms the basis of this suit. The other was against Archer Western Construction, the general contractor.

> In both cases, opposing counsel filed motions to compel arbitration, motions to stay. We had a discussion, and in the course of that discussion, it was agreed -- and please allow me to use that word in the loose sense, not a Rule 11 or a formal contract -- but it was agreed between us that I would nonsuit the arbitration. And there's a number of reasons for that. I would then move to consolidate the case against Archer into the pending litigation brought by Beaird. And the statement was, we won't move this to arbitration as long as we can get everything resolved in the context of one lawsuit. Does that answer your question?[12]

It is self-evident - this is not an express waiver of an arbitration clause.

**II.    ARCHER DID NOT SUBSTANTIALLY INVOKE THE JUDICIAL PROCESS SO AS TO IMPLIEDLY WAIVE THE ARBITRATION CLAUSE.**

Appellant agrees with Appellee that the applicable standard for this Court to consider is the "Totality of the Circumstances Test" announced by the Texas

---

[12] RR 11-12 - testimony by Appellee's former counsel, Damian Abreo, to the trial court.

Supreme Court in *Perry Homes v. Cull*.[13] This has been thoroughly briefed by the Parties, but a few points in reply to Appellee's Brief:

Appellee's statement at page 28 of its Response, that "Archer purposely delayed in seeking arbitration until after the trial court denied its motion for continuance and shortly before the trial setting" is absolutely inaccurate. The trigger here, which is conveniently ignored by Appellee, was the mediation date. On January 9, 2018, mediation was held on Beaird's claims, pursuant to order of the trial court, and all of Beaird's claims were settled, leaving only the claims between Archer Western and STI for adjudication. Therefore, on January 22, 2018, Archer Western filed its Motion to Stay the Proceeding and to Compel Arbitration[14] (the "Motion to Compel Arbitration") that is the subject of this appeal. Subsequently, on February 21, 2018, the trial court signed the Agreed Order to Dismiss Certain Claims and Parties with Prejudice. [15] This was the point in the life of this lawsuit when all that existed were claims subject to the arbitration clause. This is consistent, for example, with why pleadings, etc. filed after the consolidation did not have a statement saying they were subject to the Motion to Arbitrate.

---

[13] *Perry Homes*, 258 S.W.3d at 591-592.

[14] CR at pages 244 - 256.

[15] CSR at pages 40 - 43.

With respect to the counterclaim referenced by Appellee in its Brief, at page 25: (1) As cases cited in Appellee's own Brief state: "the filing of defensive pleadings, including mandatory or compulsive counterclaims, made in response to a party's pleadings, do not necessarily waive arbitration."[16] (2) As pointed out in Appellant's Brief, the trial court *granted* the relief requested by Appellant - it put a stop to the serial lien filing engaged in by Appellee that was interfering with funding for the construction project.[17] This is clearly not a case in which Appellant sought judicial relief that was denied and then sought to switch to a different forum - arbitration. (3) Appellee, surely, cannot engage in wrongful conduct that is subsequently restrained by the trial court,[18] and use Appellant's protective and defensive response as a basis for claiming waiver.

With respect to Appellee's argument that Appellant sought extensive merits-based discovery from STI, this is simply not borne out by the record. The discovery listed at page 27 of Appellee's Response was largely defensive and related to Beaird Drilling's claims, as detailed at pages 28 and 29 of Appellant's

---

[16] *Hogg*, 480 S.W.3d at 784 (Tex. App. - El Paso 2015, no pet.) (citing *G.T. Leach Builders*, 458 S.W.3d at 512-13).

[17] To the extent the Court considers the supplemental record filed by Appellee, the Temporary Restraining Order entered by the trial court on December 4, 2017 and the Agreed Temporary Injunction Order entered by the trial court on December 14, 2017 are part of such record - 2nd Supp. CR 217-19 and 228-89 (none of which were presented to the trial court, in the Response or at hearing).

[18] To the extent the Court considers the supplemental record, *see* 2nd Supp. CR 217-19 and 228-89.

Brief. The legal standards are addressed in Appellant's Brief, as well as further addressed below using Appellee's own cases.

Although not hugely material, Appellee's timing calculation - a delay of 5-1/2 months - is actually inaccurate. Appellee calculates its timing from the date it filed suit, July 7, 2017. The proper calculation should be when Appellant appeared in this case - August 28, 2017.[19] Appellant filed its Motion to Compel Arbitration on January 22, 2018[20] - less than five months after answering and appearing in this suit.[21] Acknowledging that length of delay standing alone is not dispositive, only one of the cases cited by both Parties to this Court even contemplates such a short time period - *Hogg v. Lynch, Chappell & Alsup*.[22] As detailed below, *Hogg* had extreme facts - Ms. Hogg perjured herself to the trial court and moved to abate for arbitration on the eve of suffering death penalty type sanctions from the trial court. As noted, even in *Hogg*:

> LCA contends that it was prejudiced by Ms. Hogg's delay in seeking arbitration, pointing out that Ms. Hogg had been aware of the existence of the arbitration clause from the outset of litigation, yet waited to file her motion to compel arbitration three months after the parties began discovery, and less than four months before the trial

---

[19] CSR at pg. 12.

[20] CR at pages 244 - 256.

[21] *See, e.g.*, RR at pg. 13, lines 19-25; and pg. 14, lines 1-16. Of course, even that is irrelevant - the Motion to Compel Arbitration was filed within two weeks of the triggering event - the mediation, and was actually filed even before the dismissal of the Beaird Drilling claims.

[22] *Hogg*, 480 S.W.3d 767.

setting. We do not, however, find that this approximate three-month delay, standing alone, prejudiced LCA's case. In fact, various courts have found that much longer delays are not sufficient to cause prejudice to the opposing party's case. *See, e.g., In re Fleetwood Homes of Tex., L.P.,* 257 S.W.3d 692, 694 (Tex.2008) (per curiam) (eight-month delay); *In re Vesta Ins. Group, Inc.,* 192 S.W.3d 759, 763 (Tex.2006) (per curiam) (two-year delay).[23]

As covered thoroughly in Appellant's Brief, typically the delays addressed by the Courts are far in excess of five months, almost always over a year, and often in excess of a year and a half.

Finally, as to this issue, a survey of the Courts of Appeal cases cited by Appellee in its Brief where a finding of waiver was found or sustained, actually push toward a finding by this Court that under the Totality of the Circumstances Test there has clearly not been a substantial invocation of the judicial process by Appellant, nor a sufficient showing of prejudice to Appellee, such as to overcome the heavy burden to show an implied waiver of the arbitration clause. We start with the incredibly thorough *Hogg* opinion, which has already been cited heavily in this Reply.

Key points from *Hogg* follow:

- As noted above, "the filing of defensive pleadings, including mandatory or compulsive counterclaims, made in response to a party's pleadings, do not necessarily waive arbitration."[24]

---

[23] *Id.* at 791.

[24] *Id.* at 784 (citing *G.T. Leach Builders,* 458 S.W.3d at 512-13).

- "Ms. Hogg correctly points out that there are multiple cases in which the parties engaged in far more extensive discovery for far longer periods of time, yet the courts in those cases found that arbitration had not been waived. In fact, the Supreme Court recently chronicled several of its holdings in which it declined to find a waiver despite rather extensive and prolonged discovery periods ranging from six to nineteen months."[25]

- "Although how long a party has engaged in pretrial activities is one factor to be considered in determining whether arbitration has been waived, a court should not look simply to the number of days between the initiation of litigation and the request for arbitration; instead, the court should consider how extensive the discovery was in the context of the facts of a particular case."[26]

- "Ms. Hogg's own attorney admitted in his sworn affidavit that at least half of the discovery conducted went to the question of the enforceability of the contingent fee agreement, which clearly went to the merits of this case."[27]

- "While we cannot conclude that the parties in this case conducted 'full discovery,' we are able to conclude that the parties had conducted a substantial amount of discovery with regard to this single-issue case, and were likely nearing the end of the discovery proceedings when Ms. Hogg filed her motion to compel arbitration. Once again, however, this does not end our analysis, as the next factor is perhaps the most important factor in our determination whether Ms. Hogg substantially invoked the judicial process [--] Ms. Hogg Willingly Engaged in Litigation Until She Faced an Adverse Ruling."[28]

---

[25] *Id.* at 788 (citing *G.T. Leach Builders*, 458 S.W.3d at 514-15).

[26] *Id.* (citing *Citizens Nat'l Bank*, 271 S.W.3d at 355 (citing *Perry Homes*, 258 S.W.3d at 590, 593)).

[27] *Id.* at 789.

[28] *Id.*

- In reading *Hogg*, it is crystal clear this was the crux of the case - the reason why both the trial court and the El Paso Court of Appeals found a waiver of the arbitration clause. In the interest of brevity, the facts will be summarized here, but they can be found at page 777 of the *Hogg* opinion. In summary, Ms. Hogg responded to a Request for Production that no recordings between her and the Defendant (the party opposing arbitration) existed; she so testified under oath to the trial judge in a motion to compel hearing; however, she had (probably accidentally) sent an email to Defendant stating: "Hey do not mention that i recorded every meeting with those attys in midland. Idk if its legal. And u def dont want them knowing i recorded mediation! My new attys will deal with it please dont even tell ur dad! No one needs to know! Love u dont worry! Focus on u sweet baby girl. Say ur prayers. It wil all come out in the end. I only appear to be stupid son! I love yall! George is watching over us! Hugs! Thank you, DGHogg."[29] Probably not surprisingly, when on the eve of being sanctioned Ms. Hogg filed a Motion to Abate for Arbitration, such Motion was denied, and the denial was affirmed by the El Paso Court of Appeals.

- It is clear from the *Hogg* opinion that the overarching basis for the Court's holding was the inescapable conclusion that Ms. Hogg was trying to avoid soon to be placed sanctions. "In the present case, Ms. Hogg was willing to participate in the discovery process and to litigate the discovery battle with LCA in a judicial forum only up until the point that she received an adverse ruling from the district court and was faced with the possibility of having the court impose case-crippling sanctions." [30] "[T]here can be no doubt that her strategy in attempting to switch forums at this critical juncture was her only hope

---

[29] *Id.* at 777. (Ms. Hogg's son's name was Scott Lee Whitley; the attorney, who was with the Defendant law firm, was named Scott Ryburn; it appears Ms. Hogg meant to send her son Scott, not to the Scott that worked for her opponent.)

[30] *Id.* at 790.

of getting a 'second bite at the apple' on the issue of the parties' discovery dispute."[31]

- The *Hogg* Court then came back to this theme, as quoted below, to find prejudice. But first, pertinent to our case, the El Paso Court of Appeals found there was insufficient evidence presented of prejudice with respect to costs incurred. Just as in this case, the evidence of costs in *Hogg* was very general and generic. "However, as set forth above, in the present case, not only did LCA fail to provide any evidence of the costs it incurred in responding to Ms. Hogg's discovery requests, it failed to provide any evidence from which we could conclude that the discovery requested by Ms. Hogg was "substantial" or that LCA provided her with 'extensive' documents in response to her requests."[32] "Therefore, based on the record before us, we are unable to conclude that LCA would suffer any significant financial detriment if the parties' dispute was submitted to arbitration."[33]

- However: "In determining whether prejudice has resulted in 'cases of waiver by litigation conduct, the precise question is not so much when waiver occurs as when a party can no longer take it back.' *Perry Homes*, 258 S.W.3d at 595. In the present case, we conclude that the point at which Ms. Hogg could not 'take it back' occurred when, after willingly participating in litigation over the discovery dispute, she suffered an adverse ruling from the trial court, and was faced with the near-certainty of having a sanctions order entered against her. Ms. Hogg's last-ditch effort to save her case from the impending sanctions order, by seeking a new forum in which she could potentially relitigate that issue, simply came too late."[34]

---

[31] *Id.* at 791.

[32] *Id.* at 793.

[33] *Id.*

[34] *Id.* at 796.

- "Therefore, because we find that Ms. Hogg purposefully and unjustifiably manipulated the exercise of her arbitral rights to her own advantage and to LCA's prejudice, we conclude that, *based on these unique facts*, Ms. Hogg waived her right to arbitration." [35]

These "unique facts" are obviously extreme; the facts before this Court in no way approach the unique facts in *Hogg*.

Below, is a brief statement of why the remaining Courts of Appeal cases cited by Appellee actually support Appellant's position in this appeal (in reverse date order):

- *BBX Operating, LLC v. American Flourite, Inc.*, No. 09-17-00245-CV, 2018 WL 651276 (Tex. App. - Beaumont February 1, 2018, no pet.) - The basis for denial of the motion to compel arbitration was invocation of relief by movant and that relief was denied by the trial court, and then movant moved to compel arbitration. "BBX then received an adverse ruling when the trial court denied BBX's motion to enforce the Rule 11 Agreement. Only after receiving this adverse ruling did BBX file its demand for arbitration." *BBX Operating* at *8.

- *Prof'l Advantage Software Solutions, Inc. v. West Gulf Mar. Ass'n Inc.*, No. 01-15-01006-CV, 2016 WL 2586690 (Tex. App. - Houston [1st Dist.] May 5, 2016, no pet.) - Particularly egregious facts - Almost three year delay in filing motion, and three attempted summary judgment motions engaged in by movant, all denied by the trial court, after which movant moved to compel arbitration.

- *Tuscan Builders, LP v. 1437 SH6 L.L.C.*, 438 S.W.3d 717 (Tex. App. - Houston [1st Dist.] 2014, no pet.) - One year delay in filing motion, during which not only did movant engage in substantial discovery, movant also joined third parties, and then benefitted from their substantial discovery.

---

[35] *Id.* (emphasis added).

14

- *Ellman v. JC Gen. Contractors*, 419 S. W. 3d 516 (Tex. App. - El Paso 2013, no pet.) - Three year delay in filing motion and movant admitted, in court pleadings, to have conducted "extensive discovery." *Ellman* at 519.

- *Okorafor v. Uncle Sam & Associates, Inc.*, 295 S.W.3d 27 (Tex. App. - Houston [1st Dist.] 2009, pet. denied) - 21 month delay in filing motion and motion was filed after movant had received respondent's discovery, but before movant had provided discovery responses and documents to respondent. The trial court even abated the hearing on the motion to compel arbitration to allow movant to respond to the discovery, and movant failed to properly do so, at which point the trial court denied the motion. "Armed with discovery provided by Uncle Sam and facing a looming deadline to produce discovery requested by Uncle Sam, the Okorafors tried to have it both ways and moved to compel arbitration." *Okorafor* at 40. As to prejudice: "Because the Okorafors had not complied correspondingly with Uncle Sam's requested discovery, Uncle Sam would be essentially handicapped by having to arbitrate without benefit of any discovery responses from the Okorafors, including potentially deemed admissions." *Id.* at 41. The trial court even deferred on ruling on the Okorafors' motion to arbitrate and gave them a week's extension to answer discovery, and, at a subsequent hearing the trial court determined, "the responses provided within that week were incomplete, missing, inadequate, and thus 'deficient.'" *Id.* The Houston Court of Appeals agreed with the trial court that, "To compel Uncle Sam to arbitrate, thus hampered by a lack of knowledge of the Okorafors' case, would result in an 'unfair advantage' to the Okorafors." *Id.*

These Courts of Appeal cases provided by Appellee further push toward the inescapable conclusion that Appellant did not impliedly waive the arbitration clause by substantially invoking the litigation process to the extremely high degree required.

## III. APPELLEE HAS NOT SHOWN LEGAL PREJUDICE SUFFICIENT FOR A FINDING OF AN IMPLIED WAIVER OF THE ARBITRATION CLAUSE.

The sum total of Appellee's evidence of prejudice is that Appellee has incurred attorney's fees between $101,000 and $104,000 "on the Archer Western litigation," plus Mr. Rubinson's January 2018 invoice.[36] Incidentally, as can be seen at RR. 20, lines 16 - 22, Appellee argues that this does not include the costs of it taking depositions of Appellant's personnel a few weeks prior to the hearing, which it claims should be added. Courts are clear - costs incurred by a non-movant to obtain discovery cannot and should not be considered in the prejudice analysis. "[A] party who *requests* lots of discovery is not prejudiced by getting it . . . ."[37] Mr. Haymond did not attempt any segregation of fees whatsoever.

During cross-examination, Mr. Haymond admitted he could not provide any more detail, including he could not even break down as to how much of the amount was due to Beaird Drilling, the former Plaintiff in this suit, and how much was due to Archer Western. Nor did he break down how much was due to Appellee's affirmative actions against the other parties to the case.

> Q. And as far as this lawsuit here today, how does that 101 to 104,000 break down as between defending against Beaird's claims versus prosecuting and defending the Archer Western claims?

---

[36] RR at pg. 20, lines 7-22; and pg. 21, lines 21-25.

[37] *Perry Homes*, 258 S.W.3d at 600 (emphasis in original). *See also Ellman*, 419 S.W.3d at 522 ("The discovery initiated by JC does not provide a basis for finding prejudice.").

16

A. So just like I said, it's the lawyers' bill per case, and I just added all the ones that said Archer Western.

Q. So you can't tell me how much of those fees are related to Beaird specifically?

A. I didn't. I wasn't asked to provide that information.

Q. Okay. And would you agree with me Beaird Drilling has been very aggressive in its prosecution of this case?

A. Not toward us.

Q. How about towards Archer Western?

A. Yeah, a lot of - - I saw a lot of paper flying to Archer.

Q. And every deposition that Beaird has noticed in the case against Archer Western, against the Lennar entities, against Mr. Allums, your attorneys have attended those depositions, correct?

A. Damian attended the first few solely.

Q. You've always had an attorney present?

A. Yes, sir.[38]

As detailed at pages 31 - 37 of Appellant's Brief, this is simply insufficient evidence to uphold a finding of prejudice sufficient to overcome the extremely high burden of showing an implied waiver of an arbitration clause.

---

[38] RR at pg. 25, lines 11-25; and pg. 26, lines 1-13.

**IV.** **APPELLANT HEREBY WITHDRAWS ITS ISSUE NO. 1 - THE TRIAL COURT ERRED (OR, ALTERNATIVELY, ABUSED ITS DISCRETION) IN DENYING ARCHER WESTERN'S MOTION TO STAY THE PROCEEDING AND TO COMPEL ARBITRATION AS THE ARBITRATION CLAUSE ITSELF PROHIBITS WAIVER.**

The clause at issue states: "Subcontractor waives to the fullest extent permitted by law any objection that they may now or may hereafter have to having arbitration proceedings conducted in the state or United States territory in which the Project is located, including any claim that it is an inconvenient forum for such arbitration or court proceedings." Appellant's reading of this clause was that "conducted in the state or United States territory in which the Project is located" simply was part of the term "arbitration proceedings;" i.e., "arbitration proceedings conducted in the state or United States territory in which the Project is located." Appellant concedes Appellee's reading, that this is a waiver about objecting to forum location, is a more logical reading of the clause, and hereby withdraws Issue No. 1.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Archer Western Construction, LLC hereby requests that this Court reverse the order of the Trial Court and render an order staying the underlying proceedings and compelling arbitration between the remaining parties to this case - Archer Western, STI, and Hanover. Archer Western Construction, LLC further prays for such other and further relief, at law and in equity, to which it may show itself justly entitled.

Respectfully submitted,

**PECKAR & ABRAMSON, P.C.**


By: */s/ Paulo Flores*
    Paulo Flores
    State Bar No. 07164447
    pflores@pecklaw.com
    Timothy D. Matheny
    State Bar No. 24000258
    tmatheny@pecklaw.com
    Tracey L. Williams
    State Bar No. 24031954
    twilliams@pecklaw.com

8080 N. Central Expressway
Suite 1600, LB 65
Dallas, Texas 75206-1819
(214) 523-5100 Telephone
(214) 521-4601 Facsimile

**ATTORNEYS FOR APPELLANT**

## CERTIFICATE OF SERVICE

I hereby certify that on this the 21st day of May, 2018, a true and correct copy of the above foregoing instrument was served upon all counsel of record in accordance with the Texas Rules of Appellate Procedure.


*/s/ Paulo Flores*
Paulo Flores


## CERTIFICATE OF COMPLIANCE

In compliance with Rule 9.4(i)(3) of the Texas Rules of Appellate Procedure, I hereby certify that there are 5,138 words total in the foregoing document, according to the Word count, excluding those words permitted to be excluded by Rule 9.4(i)(1) of the Texas Rules of Appellate Procedure.


*/s/ Paulo Flores*
Paulo Flores