**Opinion issued November 7, 2023**



**In The**

# Court of Appeals

**For The**

# First District of Texas

————————————

## NO. 01-23-00123-CV

————————————

**ANTHONY G. BUZBEE AND ANTHONY G. BUZBEE, LP D/B/A THE BUZBEE LAW FIRM, Appellants**

**V.**

**TERRY & THWEATT, P.C., Appellee**

---

**On Appeal from the 334th District Court**
**Harris County, Texas**
**Trial Court Case No. 2020-31793**

---

## MEMORANDUM OPINION

Appellants Anthony Buzbee and the Buzbee Law Firm (collectively, Buzbee) take this interlocutory appeal from the denial of their application to compel arbitration. *See* TEX. CIV. PRAC. & REM. CODE § 171.098(a)(1) (authorizing this interlocutory appeal). In two issues, Buzbee contends that (1) the arbitration

agreement applies to the dispute between Buzbee and appellee, Terry & Thweatt, P.C. (T&T); and (2) Buzbee did not waive arbitration by substantially invoking the judicial process. We affirm.

## Background

This case concerns a dispute between two Houston law firms arising from the representation of a client. Though this Court discussed the underlying facts in detail in *Buzbee v. Terry & Thweatt*, *P.C.*, No. 01-20-00659-CV, 2022 WL 52637 (Tex. App.—Houston [1st Dist.] Jan. 6, 2022, pet. denied) (mem. op.),[1] a brief recitation is necessary for the disposition of this appeal.

In October 2017, Jade James and her ex-husband, John Luengas, met with attorneys at T&T about retaining the firm to represent them in a potential wrongful death lawsuit relating to the death of their daughter. *Id.* at *1. Ultimately, James signed a representation agreement with T&T (the Contract) and agreed to pay attorney's fees on a contingency basis. *Id.* at *2. Specifically, the Contract entitled T&T to a 33 1/3% contingency fee if the case settled before suit or arbitration was

---

[1]    As will be discussed further below, Buzbee filed a motion to dismiss T&T's lawsuit under the Texas Citizens Participation Act (TCPA). *See* TEX. CIV. PRAC. & REM. CODE § 27.001-.011. After the trial court denied the motion, Buzbee filed an interlocutory appeal. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(a)(12) (authorizing interlocutory appeal from order denying TCPA motion to dismiss). On appeal, this Court affirmed the denial of Buzbee's TCPA motion. *Buzbee*, 2022 WL 52637, at *10.

filed, 40% if settled pretrial, and 45% after Plaintiff announced "ready" for trial in open court.

The Contract also contained an arbitration provision, which provided, in relevant part:

> The Client agrees that any and all disputes and/or controversies relating to fees and/or costs payable hereunder, including fees and/or costs involving associate counsel, shall be resolved solely and exclusively by arbitration. . . . Client and Attorneys understand that by Client signing this contingency fee employment agreement, Client and Attorneys are waiving their respective rights to a judge and/or jury trial on disputes and/or controversies relating to fees and/or costs payable hereunder, including fees and/or costs involving associate counsel, to binding arbitration in the manner provided herein.

James signed the Contract with T&T on October 12, 2017; however, one day later, James met with attorneys from Buzbee's law firm. That same day, James sent an email to T&T terminating the Contract, stating that she had "decided to go with a different attorney." *Id.* at *2. In response, T&T advised James that it would not release its interest in her case because James did not terminate T&T for cause. *Id.* On October 16, 2017, Buzbee filed a wrongful death lawsuit on behalf of James. *Id.* Ultimately, the wrongful death suit settled at mediation. In an effort to resolve the dispute between the law firms, Buzbee offered T&T a sum that T&T contends was "far less" than its 40% contingency fee agreement with James. T&T demanded the full 40% fee. *Id.* Represented by Buzbee, James then initiated arbitration proceedings against T&T pursuant to the Contract, and the arbitrator awarded a fee

3

of $5,000 to T&T. *Id.* at *2–3. During arbitration, Buzbee stipulated that the firm had agreed to pay any fees owed to T&T. *Id.* at *3.

James and Luengas each filed grievances against T&T with the State Bar of Texas. *Id.* at *2. T&T contends that, during the hearings before the grievance committee, James testified under oath that it was during the initial meeting with James that Buzbee promised her he would pay any fees owed to T&T on her behalf. T&T argues that because of this promise, James terminated the Contract with T&T and hired Buzbee.

This alleged promise forms the basis of the underlying suit against Buzbee. On May 27, 2020, T&T sued Buzbee for tortious interference with the Contract. The suit alleged that Buzbee knew of the Contract and "actively encouraged" James to fire T&T without cause and hire Buzbee instead. *Id.* at *3. T&T claims that "Buzbee personally assured James that if she ended up owing any fees to [T&T], [Buzbee] would pay those fees for James." *Id.* T&T claims that, due to Buzbee's interference, it lost "the full 40% contingency fee that would have been earned on the settlement of James's case." *Id.* T&T's suit also seeks exemplary damages, claiming that Buzbee acted with malice or gross negligence. *Id.*

On July 7, 2020, Buzbee moved to dismiss the suit pursuant to the TCPA. After the trial court denied the motion, Buzbee filed an interlocutory appeal, and this Court affirmed the denial in a decision issued January 6, 2022. *See id.* at *10. Buzbee

then sought a petition for discretionary review in the Texas Supreme Court, but that court denied Buzbee's petition on October 21, 2022.

By statute, Buzbee's interlocutory appeal stayed all proceedings in the trial court pending resolution of the appeal. *See* TEX. CIV. PRAC. & REM. CODE § 51.014(b). After the stay was lifted, Buzbee filed the subject motion to compel arbitration on December 16, 2022, asserting for the first time that T&T was required to arbitrate its dispute with Buzbee.[2] The trial court heard the motion by submission and ultimately denied the motion on February 16, 2023. This appeal followed.

### Denial of Motion to Compel Arbitration

In two issues, Buzbee argues that the trial court erred in denying his motion to compel arbitration. First, Buzbee argues that equitable estoppel requires T&T to arbitrate its dispute with Buzbee because T&T's tortious interference claim against Buzbee is based on the Contract and the Contract contains an arbitration provision. Second, Buzbee contends that he did not waive arbitration by substantially invoking the litigation process.

### A.    Standard of Review

We review a trial court's order denying a motion to compel arbitration for an abuse of discretion. *Wagner v. Apache Corp.*, 627 S.W.3d 277, 283 (Tex. 2021);

---

[2] Buzbee did not raise the issue of arbitration or otherwise mention arbitration in his answer to T&T's suit, the TCPA motion, or any point prior to the motion to compel arbitration.

*Henry v. Cash Biz, LP*, 551 S.W.3d 111, 115 (Tex. 2018). A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner or acts without reference to guiding rules or principles. *Taylor Morrison of Tex., Inc. v. Skufca*, 650 S.W.3d 660, 676 (Tex. App.—Houston [1st Dist.] Dec. 30, 2021, no pet.) (citing *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241–42 (Tex. 1985)). We defer to the trial court's factual determinations if they are supported by the evidence, but we review the court's legal rulings de novo. *Henry*, 551 S.W.3d at 115. A trial court has no discretion in determining what the law is, which law governs, or how to apply the law. *Skufca*, 650 S.W.3d at 676.

## B.    The Parties' Burdens

"A party seeking to compel arbitration has the initial burden to establish the arbitration agreement's existence and show that the claims asserted against it fall within the agreement's scope." *Mohamed v. Auto Nation USA Corp.*, 89 S.W.3d 830, 835 (Tex. App.—Houston [1st Dist.] 2002, no pet.) (combined appeal and orig. proceeding); *see also* TEX. CIV. PRAC. & REM. CODE § 171.021(a). The initial burden to establish the existence of a valid arbitration agreement includes proving that the party seeking to compel arbitration is a signatory to the arbitration agreement or has the right to enforce the agreement. *Mohamed*, 89 S.W.3d at 836. A non-signatory may not enforce an arbitration agreement unless "that non-signatory entity falls into

6

an exception, recognized under general equitable or contract law, that would allow such enforcement." *Id.*

"If the party seeking arbitration carries its initial burden, the burden then shifts to the party resisting arbitration to present evidence on its defenses to the arbitration agreement." *Id.* at 835 (citing *In re Oakwood Mobile Homes, Inc.*, 987 S.W.2d 571, 573 (Tex. 1999) (per curiam)).

## C. Existence of a Valid Arbitration Agreement

The parties do not dispute the existence of a valid arbitration agreement between T&T and James. Rather, the question is whether Buzbee, as a non-signatory to the agreement, can compel T&T to arbitrate its dispute against Buzbee under the agreement. Buzbee argues he can compel arbitration of T&T's tortious interference claim because T&T's "right to recover and its damages depend on the existence of the contract containing the arbitration clause." *See Cooper Indus., LLC v. Pepsi-Cola Metro. Bottling Co.*, 475 S.W.3d 436, 443 (Tex. App.—Houston [14th Dist.] 2015, no pet.). Buzbee thus argues he may compel arbitration under the doctrine of equitable estoppel. T&T disputes the application of the equitable estoppel doctrine and further argues that, in any event, Buzbee waived any right to compel arbitration.

We need not decide whether Buzbee may compel arbitration of T&T's claim under the doctrine of equitable estoppel because, even if he could, we conclude he nevertheless waived any such right by substantially invoking the judicial process.

**D.     Waiver of Right to Arbitrate**

Assuming, without deciding, that Buzbee met his initial burden to establish the existence of a valid arbitration agreement based on the doctrine of equitable estoppel, we must determine whether Buzbee waived any right to compel arbitration. *See id.* at 447 ("Once the arbitration movant establishes a valid arbitration agreement that encompasses the claims at issue, a trial court has no discretion to deny the motion to compel arbitration unless the opposing party proves a defense to arbitration such as waiver."). Whether a party waived its right to arbitrate is a question of law that we review de novo. *Henry*, 551 S.W.3d at 115; *G.T. Leach Builders, LLC v. Sapphire V.P., LP*, 458 S.W.3d 502, 511 (Tex. 2015).

Because public policy favors arbitration, there is a strong presumption against finding that a party has waived its right to arbitration, and the burden to prove waiver is thus a heavy one. *In re Bruce Terminix Co.*, 988 S.W.2d 702, 704, 705 (Tex. 1998) (per curiam); *EZ Pawn Corp. v. Mancias*, 934 S.W.2d 87, 89 (Tex. 1996) (per curiam). Any doubts regarding waiver are resolved in favor of arbitration. *In re Bruce Terminix*, 988 S.W.2d at 705.

Waiver may be implied or express, but it must be intentional. *See Mancias*, 934 S.W.2d at 89. Whether waiver occurs depends on the individual facts and circumstances of each case. *Pepe Int'l Dev. Co. v. Pub Brewing Co.*, 915 S.W.2d 925, 931 (Tex. App.—Houston [1st Dist.] 1996, no writ) (combined appeal and orig.

proceeding); *Merrill Lynch, Pierce, Fenner & Smith v. Eddings*, 838 S.W.2d 874, 879 (Tex. App.—Waco 1992, writ denied). Waiver will be found only when (1) the party seeking arbitration has substantially invoked the judicial process and (2) the party opposing arbitration suffers actual prejudice as a result.[3] *Pepe Int'l Dev.*, 915 S.W.2d at 931; *see also In re Bruce Terminix*, 988 S.W.2d at 704.

## 1. Substantially Invoking the Judicial Process

Substantially invoking the judicial process can occur when the proponent of arbitration takes specific and deliberate actions that are inconsistent with the right to arbitrate, or if it actively tries but fails to achieve a satisfactory result in litigation before turning to arbitration. *Tuscan Builders, LP v. 1437 SH6 LLC*, 438 S.W.3d 717, 720 (Tex. App.—Houston [1st Dist.] 2014, pet. denied); *see also in re Vesta Ins. Grp., Inc.*, 192 S.W.3d 759, 763 (Tex. 2006) (orig. proceeding) (per curiam). For a waiver to have occurred, the movant "must, at the very least, [have] engage[d] in some overt act in court that evince[d] a desire to resolve the [same] arbitrable dispute through litigation rather than arbitration." *Haddock v. Quinn*, 287 S.W.3d

---

[3] A recent United States Supreme Court opinion rejects any requirement of proof of prejudice as an "arbitration-specific" federal procedural rule in cases brought in federal court. *See Morgan v. Sundance, Inc.*, 596 U.S. 411, 416–19 (2022). Regardless of whether that ruling governs our analysis here, *see Momentum Project Controls, LLC v. Booflies to Beefras LLC*, No. 14-22-00712-CV, 2023 WL 4196584, at *5 n.5 (Tex. App.—Houston [14th Dist.] Jun. 27, 2023, pet. filed) (describing this as an "unsettled" question), we nevertheless determine that T&T suffered prejudice as a result of Buzbee's conduct, as outlined below.

158, 177 (Tex. App.—Fort Worth 2009, pet. denied) (combined appeal and orig. proceeding) (internal quotations omitted).

In determining whether Buzbee waived the right to arbitrate, we consider whether Buzbee's litigation conduct demonstrates an "aggressive litigation strategy" that would substantially invoke the litigation process. *See Okorafor v. Uncle Sam & Assocs., Inc.*, 295 S.W.3d 27, 40 (Tex. App.—Houston [1st Dist.] 2009, pet. denied); *see also In re Christus Spohn Health Sys. Corp.*, 231 S.W.3d 475, 479 (Tex. App.— Corpus Christi-Edinburg 2007, no pet.) (orig. proceeding) (explaining that actions inconsistent with right to arbitrate may include "some combination of filing an answer, setting up a counterclaim, pursuing extensive discovery, moving for a continuance, and failing to timely request arbitration") (citing *Cent. Nat'l Ins. Co. of Omaha v. Lerner*, 856 S.W.2d 492, 494 (Tex. App.—Houston [1st Dist.] 1993, no pet.) (orig. proceeding) (per curiam)).

In determining whether a party waived an arbitration clause, the courts can consider, among other factors: (1) whether the movant for arbitration was the plaintiff (who chose to file in court) or the defendant (who merely responded), (2) when the movant learned of the arbitration clause and how long the movant delayed before seeking arbitration, (3) the amount of the movant's pretrial activity related to the merits rather than arbitrability or jurisdiction, (4) the amount of discovery conducted, and (5) whether the movant sought judgment on the merits. *See Perry*

*Homes v. Cull*, 258 S.W.3d 580, 591–92 (Tex. 2008); *In re Hawthorne Townhomes, L.P.*, 282 S.W.3d 131, 141 (Tex. App.—Dallas 2009, no pet.) (combined appeal and orig. proceeding). We analyze whether waiver occurred based on the totality of the circumstances presented in each case. *See In re Citigroup Global Mkts., Inc.*, 258 S.W.3d 623, 625 (Tex. 2008) (orig. proceeding) (per curiam); *Okorafor*, 295 S.W.3d at 38; *Interconex, Inc. v. Ugarov*, 224 S.W.3d 523, 533 (Tex. App.—Houston [1st Dist.] 2007, no pet.). "[A]ll these factors are rarely presented in a single case." *Perry Homes*, 258 S.W.3d at 591. Although substantial delay and pretrial activity often do not rise to the level of conduct warranting waiver of the right to arbitrate, whether the movant previously attempted to dispose of the litigation on the merits "ordinarily is a key factor in assessing a waiver defense." *Pounds v. Rohe*, 592 S.W.3d 549, 554 (Tex. App.—Houston [1st Dist.] 2019, no pet.) (citing *Richmont Holdings v. Superior Recharge Sys.*, 455 S.W.3d 573, 575 (Tex. 2014) (per curiam)).

The totality of the circumstances presented by this case demonstrates an attempt by Buzbee to "have it both ways." *See In re Citigroup Global Mkts.*, 258 S.W.3d at 625 (quoting *Perry Homes*, 258 S.W.3d at 597). Buzbee sought a determination on the merits by filing a TCPA motion. Specifically, Buzbee's motion asked the trial court to dismiss T&T's suit because (1) T&T failed to make out a prima facie case as to each element of its claim, and (2) Buzbee had established his affirmative defenses as a matter of law. *See also Buzbee v. Clear Channel Outdoor,*

11

*LLC*, 616 S.W.3d 14, 22 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (describing TCPA motion as "procedural vehicle to address the merits of a claim. . . designed to accelerate the presentation of evidence to support the merits of a suit in those circumstances to which the [TCPA] applies"); *HydroChem LLC v. Evoqua Water Tech., LLC*, 650 S.W.3d 6, 10 (Tex. App.—Houston [1st Dist.] 2020, pet. denied) (explaining TCPA creates "a set of procedural mechanisms through which a litigant may require, by motion, a threshold testing of the merits of legal proceedings or filings that are deemed to implicate the expressive interests protected by the statute, with the remedies of expedited dismissal, cost-shifting, and sanctions for any found wanting") (internal quotations omitted).

Further, after the denial of Buzbee's TCPA motion by the trial court, Buzbee sought review of the trial court's decision in this Court and to the Texas Supreme Court. In total, more than two years elapsed before Buzbee raised the issue of arbitration, even though Buzbee represented James in arbitration proceedings against T&T arising out of the same arbitration agreement years earlier. "Indeed, failing to seek arbitration until after proceeding in litigation to an adverse result is the clearest form of inconsistent litigation conduct and is inevitably found to constitute substantial invocation of the litigation process resulting in waiver." *Haddock*, 287 S.W.3d at 180; *see also Accord Bus. Funding, LLC v. Ellis*, 625 S.W.3d 612, 618 (Tex. App.—Houston [14th Dist.] 2021, no pet.) (holding movant waived right to

12

arbitration where it "delayed seeking arbitration until it was clear that it would receive an adverse result" in litigation). We conclude that Buzbee's activity in the suit constituted substantial invocation of the judicial process.

## 2. Actual Prejudice

We next consider whether T&T has demonstrated sufficient prejudice resulting from Buzbee's conduct. Prejudice refers to the inherent unfairness caused by "a party's attempt to have it both ways by switching between litigation and arbitration to its own advantage." *Citigroup Global Mkts.*, 258 S.W.3d at 625 (quoting *Perry Homes*, 258 S.W.3d at 597). This inherent unfairness may be demonstrated "in terms of delay, expense, or damage to a party's legal position that occurs when the party's opponent forces it to litigate an issue and later seeks to arbitrate that same issue." *Perry Homes*, 258 S. W.3d at 597 (quoting *Republic Ins. Co. v. PAICO Receivables, LLC*, 383 F.3d 341, 346 (5th Cir. 2004)).

Here, Buzbee delayed seeking arbitration for over two years.[4] During that period, T&T was forced to respond to Buzbee's TCPA motion and was therefore obligated to present evidence to defeat Buzbee's TCPA motion, providing Buzbee with additional information concerning the basis for T&T's claims in the process.

---

[4] We recognize the two-year delay was a result of the stay pending the resolution of the TCPA motion, but that course of action was set in motion by Buzbee's litigation strategy.

Buzbee contends that T&T would have had to reveal this information during arbitration anyway. This argument shows how Buzbee's litigation conduct prejudiced T&T. By proceeding with litigation and seeking a dismissal on the merits of T&T's claims, Buzbee's actions required T&T to prematurely marshal its proof. But when Buzbee did not prevail, he nevertheless sought a second bite at the apple through arbitration. *See Pounds*, 592 S.W.3d at 558 (holding that nonmovant would suffer prejudice in arbitration after movants unsuccessfully sought resolution on merits via summary judgment; "compelling arbitration at this point in the proceedings would allow [movants] to undo the trial court's adverse summary-judgment ruling and deprive [nonmovant] of this favorable result"); *Adams v. StaxxRing, Inc.*, 344 S.W.3d 641, 652 (Tex. App.—Dallas 2011, pet. denied) (holding that requiring nonmovant to "marshal their evidence, thought process, and legal analysis" was evidence of compromise to nonmovant's legal position and relevant to showing prejudice); *see also Prof'l Advantage Software Sols., Inc. v. West Gulf Mar. Assoc., Inc.*, No. 01-15-010006-CV, 2016 WL 2586690, at *5 (Tex. App.—Houston [1st Dist.] May 5, 2016, no pet.) (mem. op.) (observing that if "arbitration were allowed [after nonmovant responded to three summary judgment motions], [movant] would have the benefit of having forced a 'preview' of [nonmovant's] case on the merits").

After considering the totality of the circumstances, as we must, *see Perry Homes*, 258 S.W.3d at 591, we determine that Buzbee's conduct in "attempt[ing] to have it both ways by switching between litigation and arbitration to [his] own advantage" evinces the "inherent unfairness" sufficient to establish prejudice. *Id.* at 597.

Having determined that Buzbee substantially invoked the judicial process to T&T's prejudice, we overrule Buzbee's second issue.

## Conclusion

We affirm the trial court's order denying Buzbee's motion to compel arbitration.

Amparo Guerra
Justice

Panel consists of Justices Goodman, Rivas-Molloy, and Guerra.

15